**JOHNSTOWN AMERICA CORPORATION,**
Plaintiff,

v.

**TRINITY INDUSTRIES, INC., Defendant.**

Civ. A. No. 92–587J.

United States District Court,
W.D. Pennsylvania.

Sept. 2, 1994.

Raymond G. Hasley, Rose, Schmidt, Hasley & DiSalle, P.C., Pittsburgh, PA, for plaintiff.

Larry D. Carlson, Robert H. Johnston III, Baker & Botts, L.L.P., Dallas, TX, Frederick N. Egler, Egler, Garrett & Egler, Pittsburgh, PA, for defendant.

## OPINION

D. BROOKS SMITH, District Judge.

Seeking injunctive relief and damages, Johnstown America Corporation ("Johnstown") has sued Trinity Industries, Inc. ("Trinity") for patent infringement. Johnstown claims that Trinity's Aluminator II railway car infringes one or more of the claims of Johnstown's United States Patent No. 4,361,097 (the " '097 patent"), either literally or under the doctrine of equivalents. By counterclaim, Trinity seeks a declaratory judgment that the Aluminator II does not infringe any claim of the '097 patent. Trinity has filed a motion for summary judgment, arguing that no literal infringement exists as a matter of law and that Johnstown's claim under the doctrine of equivalents is barred by prosecution history estoppel.

I will grant Trinity's motion in part, because I agree that the Aluminator II does not literally infringe the '097 patent. I conclude, however, that prosecution history estoppel does not apply in this case. Accordingly, Johnstown may pursue its infringement claim under the doctrine of equivalents.

## I. FACTS

Johnstown's '097 patent, obtained in 1982, describes a gondola-style, top-dumping railway car commonly used to transport bulk materials, such as coal and gravel.[1] U.S. Patent No. 4,361,097, Docket No. 43, Exh. A, col. 1, lines 5–7. Johnstown's invention improved upon previous railway cars, which were designed as rectangular boxes with either flat bottoms or depressed centers. *Id.,* col. 1, lines 11–19. The '097 patent improved a car's carrying capacity and lowered its center of gravity by "eliminating the hopper chutes, door frames, etc., from a conventional high side hopper car and substituting therefor a pair of concave troughs between the center sill and sides of the car." *Id.,* col. 1, lines 40–43. Claims 1 and 6 of the '097 patent require that the "longitudinal axis" of each trough be parallel to the "longitudinal axis" of the center sill. *Id.,* col. 3, lines 5–7; *id.,* col. 4, lines 8–9. Diagrams of the '097 patent are attached hereto as Exhibit A.

Trinity built the Aluminator II under a patent it obtained in 1993. U.S. Patent No. 5,178,084, Docket No. 43, Exh. D. Like the '097 patent, the Aluminator II is a gondola-style, top-dumping railway car with concave troughs on either side of the center sill. The troughs on the Aluminator II, however, are not parallel to the center sill. Instead, each trough slopes up from the ends of the car, where the trough is deeper, rising toward the middle, where it forms an angle of approximately 3°. Beck affidavit, Docket No. 41, ¶ 23. Diagrams of the Aluminator II are attached hereto as Exhibit B. Trinity's patent states that the sloping troughs are an improvement over the '097 patent:

> This invention provides an improved gondola car of the rotary dump type that includes a pair of troughs that extend between the trucks supporting the railway car and are disposed along each side of a center sill that extends the full length of the car. The troughs of the car of this invention, contrary to those illustrated in the '097 patent are deeper adjacent to the trucks than at the latitudinal center line of

---

1. For simplicity I will refer to "Johnstown's" prosecution of the '097 patent. In fact, the '097 patent was originally assigned to Bethlehem Steel Corporation and only later assigned to Johnstown. Kurtz depo., Docket No. 49, Exh. H, at 44.

the car. The ability to make the troughs deeper near the trucks provides a greater capacity car having a lower center of gravity or, on the other hand, provides a car having the same capacity with a lower overall height to reduce the drag effect from the wind as the car is being pulled along the tracks.

U.S. Patent No. 5,178,074, Docket No. 43, Exh. D, col. 1, lines 28–40.

Johnstown's claim for literal infringement turns on whether the longitudinal axes of the "bent" troughs on the Aluminator II are parallel to the longitudinal axis of the car's center sill, as required by claims 1 and 6 of the '097 patent. If the axes are not parallel, then Trinity has not literally infringed the '097 patent. While the parties seem to agree on the meaning of "longitudinal axis" of a center sill, they disagree over the meaning of "longitudinal axis" of a trough, as that term is found in the '097 patent. Further, the parties agree that the prosecution history of the '097 patent provides insight into the meaning of the disputed term; they disagree, however, on the nature of that insight.

*Prosecution History of the '097 Patent*

The '097 patent contains nine claims. In Johnstown's original application, claims 1 and 6 read as follows:

1. A railway car for carrying bulk material having a pair of side walls and a pair of end walls supported by spaced trucks, the improvement comprising a floor structure having

   (a) a center sill extending longitudinally over said trucks,

   (b) a pair of concave floor panels, each panel extending parallel to said center sill and between one side of said center sill and one of said side walls.

6. A floor for a railway car comprising a center sill and a pair of concave floor panels secured to opposite sides of and extending parallel to said center sill.

Patent application dated June 17, 1977, Docket No. 43, Exh. B, at 7–8.

In a decision mailed April 21, 1978, the federal Patent and Trademark Office rejected all nine claims. Decision by Examiner Howard Beltran, Docket No. 43, Exh. B, at 1. Although the examiner did not state explicitly his reason for rejecting claims 1 and 6, he provided an explanatory citation to 35 U.S.C. § 102 and United States Patent No. 1,412,- 660, registered in 1922 by Arthur T. Kuehner (the "Kuehner patent"). *Id.* at 2. Trinity contends, and Johnstown does not disagree, that a patent examiner must reject an application under 35 U.S.C. § 102 when he or she determines that the claimed invention is "anticipated by a single piece of prior art"—i.e., when the prior art contains every element of the claimed invention. Beck affidavit, Docket No. 41, at ¶ 12. Thus, we know that the examiner rejected the original language of claims 1 and 6 because he determined that the Kuehner patent contained every element of those claims. *See id.* ¶ 17. Diagrams of the Kuehner patent are attached hereto as Exhibit C.

After its original patent application was rejected, Johnstown, through its agent, John Iverson, sent a responsive letter to the Commissioner of Patents and Trademarks. Iverson's letter proposed to amend claims 1 and 6 to overcome the examiner's decision of unpatentability by "better defin[ing]" Johnstown's invention. Letter dated July 13, 1978 from John Iverson to Commissioner of Patents and Trademarks, Docket No. 43, Exh. B, at 2. Iverson explained that Johnstown's invention, a railway car meant to be inverted and top-dumped, was completely different from the Kuehner car, a bottom dumper. Although both inventions used troughs, those on the Kuehner car ended in doors meant to be opened to discharge cargo beneath the car. The troughs on Johnstown's car, on the other hand, had closed ends; their purpose was not to facilitate dumping but to increase carrying capacity and lower the car's center of gravity. *Id.* Iverson proposed to amend claims 1 and 6 as follows:

1. A railway car for carrying bulk material having a pair of side walls and a pair of end walls supported by spaced trucks, the improvement comprising a floor structure having

   (a) a center sill extending longitudinally over said trucks,

(b) a pair of concave floor panels, each panel ~~extending parallel to said center sill and between one side of said center sill and one of said side walls~~ ~~forming a longitudinal closed end curvilinear trough extending parallel to and along one side of said center sill~~.

6. A floor for a railway car comprising a center sill and a pair of ~~concave floor panels~~ ~~longitudinal closed end curvilinear troughs~~ secured to opposite sides of and extending parallel to said center sill.

*Id.* at 1.

Iverson's letter reveals that the reason behind these proposed amendments was to clarify that the ends of the troughs on the Johnstown invention were closed, in contrast to the openable troughs on the Kuehner car.[2] Iverson's proposed amendments in no way affected the requirement that the troughs of the car be parallel to the center sill. The parallelism requirement distinguished Johnstown's car from the Kuehner patent, which claimed "[downwardly] inclined trough shaped chute[s] extending longitudinally of the car." U.S. Patent No. 1,412,660, Docket No. 43, Exh. C, at 3, lines 23–24.

The next item in the file history is a letter dated September 25, 1978 from Patent Examiner Francis Husar, noting that "[t]he following changes have been made after a telephone conference with applicant's attorney Mr. John I. Iverson on September 20, 1978 [which changes] further define the structural relationships." Husar's letter notes the following amendments to claims 1 and 6:

1. A railway car for carrying bulk material having a pair of side walls and a pair of end walls supported by spaced trucks, the improvement comprising a floor structure having

(a) a center sill extending longitudinally over said trucks,

(b) a pair of concave floor panels ~~between said trucks~~, each panel forming a longitudinal ~~closed end~~ curvilinear trough ~~having closed ends, the longitudinal axis of each of said troughs~~ extending parallel ~~to and along one side of said~~

center sill ~~to the longitudinal axis of said center sill~~.

6. A floor for a railway car comprising a center sill and a pair of longitudinal ~~closed end curvilinear troughs secured to opposite sides of and extending parallel to said center sill~~ ~~curvilinear troughs having closed ends secured to opposite sides of said center sill with the longitudinal axes of said troughs extending parallel to the longitudinal axis of said center sill~~.

Letter dated Sept. 25, 1978 to Joseph O'Keefe from Francis Husar, Docket No. 43, Exh. B, at 1–2. The parties disagree over the meaning of this amendment, which added the nettlesome term "longitudinal axis."

## II. DISCUSSION

Entry of summary judgment is proper " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.' " *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(c)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. at 2510. An issue of fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party. *Id.* at 257, 106 S.Ct. at 2515; *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.,* 812 F.2d 141, 144 (3d Cir.1987).

Once the moving party has satisfied its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories to identify specific material facts giving rise to a genuine issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548,

---

**2.** Additionally, Iverson recommended using the word "curvilinear" to broaden independent claims 1 and 6 to encompass troughs shaped other than as circles. (The word "circular" appears in dependent claims 4, 7, and 8.) Iverson affidavit, Docket No. 46, ¶ 14.

2553, 91 L.Ed.2d 265 (1986). When Rule 56(e) shifts the burden of proof to the non-moving party, it must produce evidence to show the existence of every essential element which it must prove at trial. *Equimark,* 812 F.2d at 144.

### A. *The Literal Infringement Claim*

■■■ Literal infringement requires that the accused device embody every element of the patentee's claim. *Townsend Eng'g Co. v. Hitec Co.,* 829 F.2d 1086, 1090 (Fed.Cir.1987). Trinity maintains that the Aluminator II does not literally infringe claims 1 or 6 of the '097 patent because the longitudinal axes of the troughs on the Aluminator II are not parallel to the longitudinal axis of the car's center sill. Johnstown disagrees, contending that the axes are indeed parallel.

This dispute boils down to the correct definition of "longitudinal axis" of a trough. Both parties have submitted affidavits by engineering experts. Trinity has submitted the affidavit of Dr. Glenn Sinclair, a professor of mechanical engineering at Carnegie Mellon University. Johnstown has submitted the affidavit of Dr. James Romualdi, a professor of civil engineering at Carnegie Mellon and president of Romualdi, Davidson and Associates, Inc., an engineering consulting firm.

Dr. Sinclair defines the longitudinal axis of a trough as "the straight line running lengthwise through the centers of the vertical cross sections at the ends of the trough. The center of the vertical cross section at the end of a trough may be taken as either the centroid of the cross section, or the center of gravity." Sinclair affidavit, Docket No. 40, ¶ 10. Dr. Sinclair states that the longitudinal axis of a trough in the Aluminator II is in fact *two* axes, each of which slopes up (with the trough) from one end of the car to the middle. Because these two axes slope, they are not parallel to the horizontal axis of the center sill. *Id.* at ¶¶ 9, 17, 23; supplemental Sinclair affidavit, Docket No. 54, ¶ 11.

Dr. Romualdi neither disagrees with Dr. Sinclair's definition nor provides his own.

Indeed, he cites Dr. Sinclair's definition with apparent approval. *See* Romualdi affidavit, Docket No. 47, ¶¶ 13, 14, 17, 20, 22. When Dr. Romualdi applies that definition to the troughs in the Aluminator II, however, he reaches a conclusion different from Dr. Sinclair's. Dr. Romualdi maintains that "the straight line running lengthwise through the centers of the vertical cross sections at the ends of the trough" is exactly that: a straight line running from the center of one end of the trough to the center of the other end, no matter how many bends or twists or turns the trough might take. Because a trough in the Aluminator II starts and ends at the same height above the center sill, Dr. Romualdi's interpretation of the longitudinal axis of each trough is a horizontal line. Accordingly, it is parallel to the horizontal longitudinal axis of the center sill. *Id.* ¶¶ 17, 22.

I conclude that Dr. Sinclair's definition and interpretation of "longitudinal axis" of a trough are correct. I base my determination on the geometrical definition of "axis": "a line about which a geometrical figure is symmetrical." *American Heritage Dictionary of Science* 55 (1986), copy attached as Exh. D to Sinclair affidavit, Docket No. 40. In the Aluminator II, the line about which each trough is symmetrical cannot be, as a matter of geometry, a horizontal line from one end of the trough to the other. That would be the case only for a horizontal trough, as in the '097 patent. Once one bends the trough, as in the Aluminator II, the trough becomes symmetrical about *two* lines, each of which slopes up (with the trough) from either end of the car to the middle. Determining a longitudinal axis in a solid figure which is, as Dr. Sinclair states, "geometrically continuous," such as a cylinder or a cone, is different from determining a longitudinal axis in a geometrically discontinuous figure, such as a "bent" cylinder or a cone.[3] "[T]he method of locating a longitudinal axis must be applied to *each of the parts of the floor structure* in the Aluminator II car that are separated by the geometric discontinuity." Supplemental

---

**3.** Geometric discontinuity, not the number of troughs, is the reason why each trough on the Aluminator II has two longitudinal axes. Thus,

whether the Aluminator II technically has two troughs, as Johnstown contends, or four troughs, as Trinity contends, is immaterial.

Sinclair affidavit, Docket No. 54, at ¶ 11 (emphasis added).[4]

■ My conclusion is based on geometry. It does not derive from a credibility determination made after comparing the curricula vitae of the two experts. Indeed, both parties' experts present impressive credentials. Because the experts disagree, one might mistakenly conclude that the question of which party has correctly defined "longitudinal axis" of a trough is a question of fact to be determined by a jury after hearing testimony from both sides' experts. Claim interpretation is, however, a question of law. *See, e.g., Texas Instrs., Inc. v. United States Int'l Trade Comm'n,* 988 F.2d 1165, 1171 (Fed. Cir.1993). Claim interpretation includes determining the meaning of a term in a claim. Even when such a determination requires the consideration of extrinsic evidence, such as conflicting expert testimony, it remains a question of law. *See, e.g., id.; Hormone Research Found. v. Genentech, Inc.,* 904 F.2d 1558, 1562, 1563 n. 7 (Fed.Cir.1990), *cert. dismissed,* 499 U.S. 955, 111 S.Ct. 1434, 113 L.Ed.2d 485 (1991); *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1579–80 (Fed.Cir.1989); *Tandon Corp. v. United States Int'l Trade Comm'n,* 831 F.2d 1017, 1021 (Fed.Cir.1987) (citing *H.H. Robertson Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 389 (Fed.Cir.1987); *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1117 n. 11, 1118 (Fed.Cir.1985)). Accordingly, what is the correct definition of "longitudinal axis" is a question of law, and it is within the province of this Court to resolve the issue on summary judgment. *See, e.g., Johnston,* 885 F.2d at 1580 (when the paten-

tee's claims do not read on the accused device exactly, a finding of no literal infringement on summary judgment is proper).

### B. *The Infringement Claim Under the Doctrine of Equivalents*

■ Johnstown asserts that even if the Trinity patent does not literally infringe claims 1 or 6 of the '097 patent, it infringes those claims under the doctrine of equivalents. Under that doctrine, Trinity is liable for infringement if the Aluminator II performs "substantially the same function in substantially the same way to achieve substantially the same result" as the '097 patent. *Malta v. Schulmerich Carillons, Inc.,* 952 F.2d 1320, 1325 (Fed.Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 2942, 119 L.Ed.2d 566 (1992). Whether the two are equivalents is a question of fact. *Id.*

■ Although Trinity acknowledges that equivalency cannot be determined on summary judgment because it is a question of fact, it argues that Johnstown is estopped from pursuing its equivalency claim under the rule known as prosecution history estoppel or "file wrapper estoppel." Prosecution history estoppel "bars a patentee from enforcing its claims against otherwise legally equivalent structures if those structures were excluded by claim limitations added in order to avoid prior art." *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,* 944 F.2d 870, 882 (Fed.Cir.1991) (quotation omitted). Conversely, prosecution history estoppel does not apply when claim language is

---

4. In addition to Dr. Romualdi's affidavit, Johnstown has submitted portions of the depositions of two of the three inventors of the '097 patent, Robert Dorian and Richard Jones, who testified that they define "longitudinal axis" of a trough as the line one sees when one looks at a trough from the top of the car, rather than from the side. Dorian depo., Docket No. 49, Exh. J, at 46; Jones depo., Docket No. 49, Exh. I, at 93.

I find no merit to Johnstown's alternative definition. To begin with, Johnstown supports its "top-view" definition not with any scientific proof but with the self-serving statements of the inventors of the '097 patent. "[L]itigation-induced pronouncements of [an] inventor ... have no effect on what the words of that document in fact do convey and have conveyed during its term to the public." *Lear Siegler, Inc. v. Aero-*

*quip Corp.,* 733 F.2d 881, 889 (Fed.Cir.1984); *accord Senmed, Inc. v. Richard–Allan Med. Indus.,* 888 F.2d 815, 819 n. 8 (Fed.Cir.1989). Furthermore, neither Dorian nor Jones has any special insight into the meaning of the term "longitudinal axis" because that term was not in the original application and neither Dorian nor Jones suggested that the application be amended with that language. Indeed, both men testified that they did not know why the term "longitudinal axis" was added. Dorian depo., Docket No. 54, at 36; Jones depo., Docket No. 54, at 66, 69. Finally, such a definition is illogical; it completely ignores the fact that an "axis" is "a line about which a geometrical figure is symmetrical." *American Heritage Dictionary of Science* 55 (1986), copy attached as Exh. D to Sinclair affidavit, Docket No. 40.

amended for some reason other than to avoid prior art. Therefore, "[i]n determining whether prosecution history estoppel applies because of a change in claim language during prosecution, the court must consider not only what was changed, but the *reason* for such change." *Id.* As the Federal Circuit has explained,

> Amendment of claims is a common practice in prosecution of patent applications. No reason or warrant exists for limiting application of the doctrine of equivalents to those comparatively few claims allowed exactly as originally filed and never amended. Amendments may be of different types and may serve different functions. Depending on the nature and purpose of an amendment, it may have a limiting effect within a spectrum ranging from great to small to zero.

*Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1363 (Fed.Cir.1983).

Whether prosecution history estoppel applies is a question of law. *Hoganas AB v. Dresser Indus.,* 9 F.3d 948, 952 (Fed.Cir. 1993). Trinity maintains that prosecution estoppel applies here because Johnstown, in prosecuting its application for the '097 patent, specifically amended the language of claims 1 and 6 to limit those claims to railway cars with troughs whose longitudinal axes are parallel to the longitudinal axis of the center sill.

I am unpersuaded. Although the term "longitudinal axis" was added by amendment, the parallelism requirement was not; claims 1 and 6 in Johnstown's original application described "a pair of concave floor panels, each panel extending parallel to said center sill." Because the parallelism requirement existed even before the claims language was amended, it is beyond dispute that the purpose of amending claims 1 and 6 by adding the term "longitudinal axis" was not to impose parallelism as a "new" limitation on Johnstown's invention.

The parallelism requirement of the Johnstown invention always distinguished it from the Kuehner patent, even before the term "longitudinal axis" was added. Although Trinity correctly notes that the patent examiner rejected Johnstown's application because he determined that the Kuehner patent contained every element of Johnstown's invention, I am not bound by the examiner's decision on that point—particularly as his decision clashes with the language in Johnstown's application. *See, e.g., In re Baxter Travenol Labs,* 952 F.2d 388, 390 (Fed.Cir. 1991) (anticipation under 35 U.S.C. § 102 is a question of fact, and a court will reverse a finding of anticipation if clearly erroneous); *see also Axia Inc. v. Jarke Corp.,* 12 U.S.P.Q.2d 1049, 1053, 1989 WL 39722 (N.D.Ill.1989) ("There is ... support for not applying prosecution history estoppel where a claim is amended in response to an examiner's incorrect rejection.") (citing *Great Northern Corp. v. Davis Core & Pad Co.,* 782 F.2d 159, 166 (Fed.Cir.1986)). It cannot be said that the Kuehner patent, which claimed "[downwardly] inclined trough shaped chute[s] extending longitudinally of the car," anticipated Johnstown's invention, which uses "a pair of concave floor panels, each panel extending parallel to said center sill." Inclined troughs cannot be parallel to a center sill because a sill is, by definition, horizontal. *See Webster's New World Dictionary* 1249 (3d college ed. 1988).

If the purpose of adding the words "longitudinal axis" to claims 1 and 6 was not to distinguish Johnstown's invention from the Kuehner patent, what, then, was its purpose? The only reasonable explanation is that it provided a technical refinement in terminology. The original patent application required that the troughs be parallel to the center sill, whereas the issued patent requires that the longitudinal axes of the troughs be parallel to the longitudinal axis of the sill. The only effect of this change is to specify the two *lines*—rather than the two parts of the car—which must be parallel. It appears that this change was made to simplify and clarify the parallelism requirement. One could anticipate disputes arising under the original language over what *part* of the trough and what *part* of the sill one measures from when determining whether they are parallel. Under the amended language, such disputes are less likely to arise.

■ Prosecution history estoppel applies where a claim is amended to add a new

limitation over prior art, not where, as here, a claim is amended to describe an existing limitation with more technically precise language. *See, e.g., Andrew Corp. v. Gabriel Elec., Inc.,* 847 F.2d 819, 825 (Fed.Cir.) (prosecution history estoppel did not apply where claim language was amended "for the purposes of explication and clarity"), *cert. denied,* 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 330 (1988). As no bar exists to Johnstown's infringement claim under the doctrine of equivalents, Johnstown may pursue that claim at trial.

An appropriate order follows.

## ORDER

AND NOW, this 2nd day of September, 1994, consistent with the foregoing opinion, defendant's motion for summary judgment (Docket No. 38) is granted in part. It is hereby ORDERED that defendant's motion is GRANTED as to plaintiff's claim for literal infringement, but DENIED as to plaintiff's claim for infringement under the doctrine of equivalents.

This case will be listed on the November 1994 trial term for Johnstown.

FIG. 2

FIG. 1

FIG. 3

EXHIBIT B

1172

EXHIBIT C

**A. T. KUEHNER.**

FREIGHT CAR HOPPER.

APPLICATION FILED DEC. 24, 1920.

**1,412,660.**

Patented Apr. 11, 1922.

2 SHEETS—SHEET I.

Fig. 1.

Fig. 4.

Inventor

A. T. Kuehner.

By Lacey & Lacey, Attorneys

A. T. KUEHNER.
FREIGHT CAR HOPPER.
APPLICATION FILED DEC. 24, 1920.

1,412,660.

Patented Apr. 11, 1922.
2 SHEETS—SHEET 2.

Fig. 2.

Fig. 3.

Fig. 5.

Inventor
A. T. Kuehner.

By
Lacy & Lacy, Attorneys