**AUSTRALIA VISION SERVICES PTY. LTD, Plaintiff,**

v.

**DIOPTICS MEDICAL PRODUCTS, INC., and Henry Lane, Defendants.**

**No. CV 98–1976 RAP (JGx).**

United States District Court, C.D. California.

Dec. 9, 1998.

Steven E. Shapiro, Mitchell Silberberg & Knupp, Los Angeles, CA, for plaintiff.

Thomas B. Haverstock, Jonathan O. Owens, Haverstock & Owens, Palo Alto, CA, for defendants.

**AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON–INFRINGEMENT AND INVALIDITY OF THE '083 PATENT**

PAEZ, District Judge.

## I.

### *Introduction*

Plaintiff Australia Vision Services ("Vision Services") brought this action for damages against defendants Dioptics Medical Products and Henry Lane (collectively "Dioptics") alleging willful infringement of Design Patent No. 387,083 (" '083 patent"), issued December 2, 1997. The '083 patent claim concerns the ornamental design for a pair of sunglasses that fit over prescription glasses.

Vision Services asserts claims for patent infringement and trade dress infringement in its complaint.

Pending before the Court is Dioptics' Motion for Summary Judgment of Non–Infringement and Invalidity of the '083 patent. Upon full consideration of the moving, opposition, reply papers, and oral arguments, the Court hereby GRANTS defendants' motion for summary judgment with respect to non-infringement, but DENIES summary judgment of the invalidity of the '083 patent as there are material issues of fact in dispute.

## II.

### *Material Facts*

The parties do not dispute the following facts. Plaintiff Vision Services is a corporation located in New South Wales, Australia, which designs, manufactures and sells vision products, including sunglasses. Defendant Dioptics, a California Corporation, also manufactures and sells vision-related products, including sunglasses. Paul Stables, the president of Vision Services, applied for a U.S. Design Patent for his ornamental design of sunglasses that fit over prescription glasses on November 9, 1995.[1] Included in the '083 patent application was a set of required first drawings.

In the first Office Action mailed May 14, 1996, the patent examiner objected to the original drawings, under 35 U.S.C. § 112, because the attached drawings were inadequate. File History for the '083 patent ("FH"), Paper No. 2, ¶¶ 1–2. Specifically, the drawings lacked surface shading. *Id.* at ¶ 5. The examiner emphasized that "as the drawing constitutes the whole disclosure of the design, it is of the utmost importance that it be so well executed both as to clarity of showing and completeness, that nothing regarding the design sought to be patented is left to conjecture." *Id.* at ¶ 6. In addition, the examiner warned that new drawings must not include any markings "which could be construed to be new matter, the same being prohibited by 35 U.S.C. § 132 and 37 C.F.R. § 1.118." *Id.* at ¶ 7.

---

1. Vision Services prosecuted the patent application on behalf of the inventor, Paul Stables, who is also employed by that company.

Despite this warning, Vision Services submitted new amended drawings, on August 14, 1996, containing surface shading that indicated the presence of transparent lenses on the side panels. FH, Paper No. 3, Figures 1–7. The patent examiner again rejected the claim citing the addition of the transparent lenses as new matter. FH, Paper No. 4, ¶ 3. In the Office Action, dated December 5, 1996, the patent examiner specifically stated the following:

> The proposed additional or amended illustration has been entered, however said amendment introduces new matter (35 U.S.C. § 132, 37 C.F.R. § 1.118). **Specifically, the transparent lens shown in the side panel is new matter.** Due to the differences between the original and new drawings, applicant's disclosure fails to comply with the description requirement of 35 U.S.C. § 112, first paragraph. Accordingly, the claim is rejected in that the disclosure does not satisfy the description requirement of 35 U.S.C. § 112, first paragraph. (*In re Kaslow*, 707 F.2d 1366, 217 U.S.P.Q. 1089 (Fed.Cir.1983) and *In re Rasmussen*, 650 F.2d 1212, 211 U.S.P.Q. 323 (CCPA 1981)).

FH, Paper No. 4, ¶ 3 (emphasis in original). To overcome this rejection, Vision Services re-submitted the amended drawings but this time, it indicated the removal of the transparent lenses. FH, Paper No. 5, Figure 2. In light of this correction, the patent examiner allowed the claim and the '083 patent was issued December 2, 1997. FH, Paper No. 8.

Vision Services manufactures, advertises and sells sunglasses labeled *Fitovers* ® which are based on the '083 patent. In March of 1998, Vision Services learned that Dioptics was manufacturing, selling and advertising sunglasses allegedly similar to the *Fitovers* ® under the name of *Solar Shield* ® *Ultra*. Consequently, Vision Services filed this complaint on March 19, 1998, seeking monetary damages and injunctive relief.

### III.

### *Discussion*

**A. *Standard for Summary Judgment***

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In a trilogy of 1986 cases, the Supreme Court clarified the applicable standards for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. *Id.* at 248, 106 S.Ct. 2505. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative, admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548.

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In assessing whether the non-moving party has raised a genuine issue, its evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact. *Id.* at 252, 106 S.Ct. 2505. As the Supreme Court explained in *Matsushita*,

[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Id.,* 475 U.S. at 586–87, 106 S.Ct. 1348.

To be admissible for purposes of summary judgment, declarations or affidavits must be based on personal knowledge, must set forth "such facts as would be admissible in evidence," and must show that the declarant or affiant is competent to testify concerning the facts at issue. Fed.R.Civ.P. 56(e). Declarations on information and belief are insufficient to establish a factual dispute for purposes of summary judgment. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

Summary judgment is not treated as "a disfavored procedural shortcut" but as "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### B. Infringement of the '083 Design Patent

#### 1. Standard for Design Infringement

 Over a hundred years ago, the Supreme Court established the test for assessing infringement of a design patent:

If, in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

**2.** *See also, Reachi v. Edmond,* 277 F.2d 850, 852 (9th Cir.1960) (same); *Sunbeam Lighting Co. v. Pacific Associated Lighting Inc.,* 328 F.2d 300, 301 (9th Cir.1964) (same); *Whittar Industries, Ltd., v. Superior Industries Int'l, Inc.,* 1986 WL 9880 (C.D.Cal.) (same).

**3.** *See also, Arner v. Sharper Image Corp.,* 39 U.S.P.Q.2d 1282, 1293 (C.D.Cal.1995) (evaluating design for similarity as a whole rather than in part); *Braun Inc. v. Dynamics Corp. Of America,* 975 F.2d 815, 820 (Fed.Cir.1992) (same); *Spalding & Evenflo Cos., Inc. v. Graco Metal*

*Gorham Co. v. White,* 14 Wall. 511, 81 U.S. 511, 528, 20 L.Ed. 731 (1871).[2] When evaluating the similarity between the two items, the trier of fact must consider the design taken as a whole rather than focus on isolated portions of the design. "We do not say that in determining whether two designs are substantially the same, differences in the lines [or] the configuration ... are not to be considered; but we think the controlling consideration is the resultant effect." *Gorham,* at 526.[3] Accordingly, a list of design differences is relevant but does not end the substantial similarity inquiry. *Arner v. Sharper Image Corp.,* 39 U.S.P.Q.2d 1282, 1293 (C.D.Cal.1995).[4] Patent infringement is a "question of fact, to be proven by a preponderance of evidence." *Braun, Inc. v. Dynamics Corp. Of America,* 975 F.2d 815, 819 (Fed.Cir.1992); *see also, Arner, supra,* at 1293; *Burger Train Systems, Inc., v. Ballard,* 552 F.2d 1377, 1381 (10th Cir.1977) (same).

#### 2. Prosecution History Estoppel and Design Patents

Although the standard for determining whether an accused product infringes a design patent is well recognized, we do not literally apply the test to conclude that defendants' motion for summary judgment of non-infringement should be granted. Instead, Dioptics claims, that its *Solar Shield* ® *Ultra* sunglasses do not infringe the '083 patent because plaintiff is estopped by the doctrine of prosecution history estoppel from broadening the patented design to include glasses with side panel lenses. As noted above, the patent examiner specifically rejected the addition of side panel lenses during the prosecution of the '083 patent. Dioptics' sunglasses contain tinted side lenses in

*Products, Inc.,* 1991 WL 148127 (N.D.Ohio) ("It is not the Court's job in a design patent infringement case to scrutinize particular portions of objects and delineate how the individual constituents differ from one another.").

**4.** *Arner* presents a two-step inquiry for assessing design infringement: (1) substantial similarity between the designs; and (2) the accused device appropriates the novelty of the patented device. 39 U.S.P.Q.2d at 1293 (citing *Litton Systems, Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1444 (Fed.Cir. 1984)).

contrast to the '083 patent figures which do not. While acknowledging the patent examiner's rulings, Vision Services contends that: (1) the doctrine of prosecution history does not apply in design patent cases, and (2) even if it does, prosecution history estoppel only applies to amendments made to overcome prior art objections.

 To address the prosecution history estoppel argument, it is helpful to review the standard for establishing prosecution history estoppel. The doctrine of prosecution history estoppel precludes a patentee from obtaining a construction of a claim that would, in effect, resurrect subject matter surrendered during exchanges with the PTO examiner. *See Townsend Engineering Co. v. HiTec Co., Ltd.*, 829 F.2d 1086, 1090 (Fed.Cir.1987); *accord Hoganas AB v. Dresser Industries, Inc.*, 9 F.3d 948, 952 (Fed.Cir.1993). As a practical matter, if a patent applicant submits arguments distinguishing a claim over prior art or narrows his claims by amendment or cancellation to meet the objections of the PTO examiner as to the patentability of the original claims he and his assigns may not, at a later date, recapture by construction the full scope of the claims that were previously surrendered. *See Keystone Driller Co. v. Northwest Engineering Corp.*, 294 U.S. 42, 55 S.Ct. 262, 79 L.Ed. 747 (1935). Whether prosecution history estoppel applies is a question of law. *See LaBounty Mfg., Inc. v. United States Int'l Trade Com'n*, 867 F.2d 1572, 1576 (Fed.Cir.1989).

 In determining whether prosecution history estoppel applies because of a change in claim language, a court "must consider not only what was changed, but the reason for such change." *See Wang Laboratories, Inc. v. Toshiba Corp.*, 993 F.2d 858, 866 (Fed.Cir.1993) (citations omitted); *Warner–Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 117 S.Ct. 1040, 1050, 137 L.Ed.2d 146 (1997) ("Our prior cases have consistently applied prosecution history estoppel only where claims have been amended for a limited set of reasons, and we see no substantial cause for requiring a more

rigid rule invoking an estoppel regardless of the reasons for a change.")

> [T]he legal standard for determining what subject matter was relinquished is an objective one, measured from the vantage point of what a competitor was reasonably entitled to conclude, from the prosecution history, that the applicant gave up to procure issuance of the patent.

*Haynes Intern., Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1577 (Fed.Cir.1993), *clarified,* 15 F.3d 1076 (1994).

 Ultimately, where prosecution history estoppel has been raised as a defense to an allegation of patent infringement, the patent holder bears the burden of establishing that the reason for the required amendment was not related to patentability. *Hilton Davis Chemical Co.*, 117 S.Ct. at 1050. If, however, no explanation for the amendment is established, "the court should presume that the PTO had a substantial reason related to patentability for including the limiting element added by the amendment." *Id.*

 While courts typically apply prosecution history estoppel to cases that involve the infringement of utility or process patents under the doctrine of equivalents, prosecution history estoppel is also applicable to design patent infringement cases.[5] *McGrady v. Aspenglas Corp.*, 487 F.Supp. 859, 861 (S.D.N.Y.1980) ("That the question of file wrapper estoppel is uncommon in design patent cases is no reason to reject its use in an appropriate case."); *see also, Stimulant Products, Inc., v. Vibrex Corp.*, 161 U.S.P.Q. 513, 517 (C.D.Cal.1969) ("Defendants are estopped by the doctrine of file wrapper estoppel from claiming that 'Plaintiff[ ] infringes claims 1, 2 and 3 of Patent No. 3,375,381 or Design Patent No. Des. 210,922."); *W.R. Grace & Co., Inc., v. Western U.S. Industries, Inc.*, 187 U.S.P.Q. 40, 47 (C.D.Cal.1975) (holding as a matter of law that file wrapper estoppel narrowed the interpretation of a design patent); 1 CHISUM, DONALD S., CHISUM ON PATENTS § 1.04[4], n. 2 (1998) ("[F]ile

---

5. Even if the Court were to find that prosecution history estoppel has previously applied only as a defense to the doctrine of equivalents, the doctrine of equivalents and design infringement employ essentially the same test. Thus, it seems

logical that if prosecution history can be applied as a defense to infringement under the doctrine of equivalents then it should also be applicable as a defense to design infringement.

Wrapper estoppel applies to design patents in determining infringement.").[6]

Vision Services cites several cases to support its argument that prosecution history estoppel does not apply to design patents or if it does, that estoppel may only be used to overcome prior art objections. *Johnstown America Corp. v. Trinity Industries, Inc.*, 865 F.Supp. 1159 (W.D.Pa.1994), *rev'd*, 114 F.3d 1206 (Fed.Cir.1997), *cert. denied*, — U.S. —, 118 S.Ct. 691, 139 L.Ed.2d 637 (1998); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211 (Fed.Cir.1995); *ALM Surgical Equipment Inc. v. Kirschner Medical Corp.*, 15 U.S.P.Q.2d 1241, 1248 (D.S.C.1990). However, these cases do not compel a different result nor do they persuade the Court to adopt a different analysis.

First, Vision Services fails to note that *Johnstown* has been reversed and remanded. Second, in *Pall*, the Federal Circuit observed that prosecution history normally arises when the patentee modifies claims to overcome prior art objections. 66 F.3d at 1219. The *Pall* decision, however, acknowledges that the doctrine may also arise in response to rejections under § 112. In such circumstances, a presumption of estoppel would not exist but instead would depend on the "particular facts" in question. *Id.* at 1220. Here, the patent examiner explicitly rejected the addition of side lenses as new matter and refused to allow the patent until they were removed. As a result, the patentee expressly limited the claim of its design patent to eliminate side lenses. Put simply, these "particular facts" represent a classic example of when to apply prosecution history estoppel to a claim of infringement.

In *ALM*, the district court held "as a matter of law, [that] rejections based upon 35 U.S.C. § 112 cannot create a file wrapper estoppel." 15 U.S.P.Q.2d at 1248. While some district courts have held that prosecution history estoppel only applies to amendments based on prior art objections, the Supreme Court has never outright precluded the use of this doctrine for amendments re-

lated to the scope of the invention. 4 CHISUM, DONALD S., CHISUM ON PATENTS § 18.05[2] (statements that file wrapper estoppel only applies to changes made to overcome prior art-based rejections 'are not supportable.').[7]

Furthermore, if plaintiff were right that prosecution history estoppel did not apply to design patents, then a design patentee would be able to draft claims narrowly during prosecution to avoid invalidity then broaden the claims during litigation to encompass rejected limitations. This result would be contrary to established patent principles of claim interpretation and notice. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583–84 (Fed.Cir.1996).

### 3. Application

 An examination of the '083 patent prosecution file unambiguously reveals that the patent examiner rejected the claim initially because the drawings lacked surface shadings. Vision Services submitted amended drawings to correct this error. The examiner rejected these drawings under 35 U.S.C. § 112 because they added new matter in that they indicated the glasses now contained transparent lenses on the side panels. Vision Services deleted these lenses on the side panels to comply with the examiner's request. As a result, Vision Services received a patent for the sunglasses with openings on the side panels. The facts are undisputed that the examiner rejected the drawings for new matter, that Vision Services corrected this error and eliminated the side lenses and that the patent was issued devoid of the side lenses. Thus, the amendment to the drawings directly relates to the patentability of Vision Services' sunglasses.

In light of these undisputed facts, the Court finds that the claim for the '083 patent was narrowed to exclude side panel lenses. It is also undisputed that the alleged infringing *Solar Shield® Ultra* sunglasses by Dioptics contain dark tinted lenses on the side

---

**6.** The Court notes that all of these cases predate the establishment of the Court of Appeals for the Federal Circuit and that the Federal Circuit, to this date, has not directly addressed the issue of whether the doctrine of prosecution history estoppel applies to design patents.

**7.** *See e.g., Leesona Corp. v. Varta Batteries, Inc.*, 522 F.Supp. 1304 (S.D.N.Y.1981) ("if file wrapper estoppel is to arise at all in connection with non-art amendments, it should arise only where the changes made were essential to the scope of the invention.").

panels. Accordingly, as a matter of law, Vision Services is estopped from alleging infringement of the '083 patent under the doctrine of prosecution history estoppel. Thus, the Court hereby grants defendant's motion for partial summary judgment of non-infringement of the '083 patent.

### C. The Validity of the '083 Patent

#### 1. Non-enabling

Under Section 112 of Title 35, a patent is invalid if the specification for the design does not contain a sufficient description to enable a person skilled in the art to make and use the patented design. Section 112 provides:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is mostly nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

■ Dioptics argues that the '083 patent did not disclose enough shape or contour to enable a person skilled in the art to make and use the patented design. 35 U.S.C. § 112. Dioptics did not include any evidence or declarations by experts in the field to attest to the indefiniteness of the '083 patent design. Instead, Dioptics' motion was simply supported by conclusory statements based on a visual inspection of the drawings that no individual could use the patent to successfully create the sunglasses. The Court cannot conclude the '083 patent is invalid as a matter of law because the court lacks the expertise to determine whether the drawn figures are sufficient to enable a person skilled in the art to replicate the design. Our conclusion is similar to the one reached by the district court in *Hadco Products, Inc. v. Lighting Corp. of America, Inc.,* 312 F.Supp. 1173, 1181 (E.D.Pa.1970), *rev'd on other grounds,* 462 F.2d 1265 (3rd Cir.1972). There, the district court rejected the defendant's at-

tempt to invalidate the patent at issue under 112 where the defendant merely pointed out inconsistencies and errors in the drawings without providing an expert opinion to support its conclusions. 312 F.Supp. at 1181. Accordingly, the Court hereby DENIES the motion for summary judgment for invalidity with respect to the enabling aspect of the '083 patent because there is a factual dispute whether the drawings can enable a person skilled in the art to replicate the patented design.

#### 2. New Matter

■ Section 132 of Title 35 prohibits the introduction of new matter in a patent application which serves to broaden the scope of the patent claim. Rule 118 of the Patent Office Rules also prohibits the addition of any amendments to an original application which include new matter.[8] The acceptance of an amendment "is entitled to special weight and should not be disturbed unless clearly erroneous." *Baldwin–Lima–Hamilton Corp. v. Tatnall Measuring Systems Co.,* 169 F.Supp. 1 (E.D.Pa.1958), *aff'd,* 268 F.2d 395 (3rd Cir.1959), *cert. denied,* 361 U.S. 894, 80 S.Ct. 198, 4 L.Ed.2d 151 (1959); *Technicon Instruments Corp. v. Coleman Instruments Corp.,* 385 F.2d 391 (7th Cir.1967). Thus, the ultimate question for determining new matter is whether the Patent Office acted clearly erroneously when it accepted Vision Services amended drawings.

Some district courts have held that minor inconsistencies or errors in figures did not constitute new matter and thereby upheld the validity of the patent in question. *Hadco, supra,* at 1183 (upholding validity of patent reasoning that the inconsistencies were made "during the initial prosecution of the patent and at the request of the examiner who closely scrutinized them with regard to new matter."); *see also, Ex Parte Asano,* 201 U.S.P.Q. 315 (PTO Bd.App., 1978) ("Mechanical drawing errors and figure inconsistencies noted by the examiner to be insignificant,

---

8. Rule 118 provides: "Amendment of disclosure. In original applications, all amendments of the drawings or specifications, and all additions thereto, must conform to at least one of them as it was at the time of the filing of the application. Matter not found in either, involving a departure from or an addition to the original disclosure, cannot be added to the application even though supported by a supplemental oath, and can be shown or claimed only in a separate application."

and that they would present no problems as far as making the disclosed design to one of ordinary skill in the art."); *Ex Parte Kosugi*, 144 U.S.P.Q. 136, 137 (PTO Bd.App., 1964) ("A correction to a drawing for the purpose of rectifying an inconsistency does not necessarily involve new matter."); *but see, Whiteway Mfg. Co. v. Oscar Phillips Co.*, 261 F.Supp. 841 (S.D.Ohio 1966) (holding that inconsistencies in drawings between the amended and the original application constituted new matter and consequently, the court granted summary judgment after declaring the patent invalid).

 Here, Dioptics contends that the second set of amended drawings submitted by Vision Services varied so significantly from the first set of drawings that they constituted new matter. The defendant highlights several alleged differences in shape and contour between the original design figures and the second figures to support its argument. For a visual representation, see Exhibit No. 1 attached to Dioptics' Motion for Summary Judgment. Visual Services contends in its opposition that Dioptics misrepresents the actual drawings and that any slight differences are minor inconsistencies. It is a question of fact whether the amended drawings vary so significantly from the original design figures to represent new matter.

Because there are material issues of fact in dispute as to (1) whether there are alterations between the original and amended set of drawings, and/or (2) if alterations exist between the original and the amended drawings, whether these differences constitute new matter or are merely insignificant inconsistencies, the Court DENIES defendants' motion for summary judgment for invalidity of the '083 patent with respect to the addition of new matter.

### 3. Public Use

 Under 35 U.S.C. § 102(b), a person is entitled to a patent unless "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."

Section 102(b) only applies to designs put into the market more than one year prior to the date of filing the patent application. Dioptics contends that Vision Services marketed sunglasses based on the second set of amended drawings a year before the drawings were received by the Patent Office. However, Section 102(b) does not apply to products based on amended drawings but rather to products that were placed on sale prior to the filing of the application. It is undisputed that the sunglasses based on the second set of drawings were placed in public use *after* the filing of the application. Furthermore, Vision Services sold and marketed the original sunglasses in June of 1995 well within the statutory limitation set forth in Section 102(b). Vision Services filed its application for the design patent on November 9, 1995. Thus, whether the Court relies on the original sunglasses or the ones that were marketed before the second set of amended drawings, either product falls within the statutory guidelines. Accordingly, the Court DENIES the motion for summary judgment for invalidity of the '083 patent with respect to Section 102(b).

### IV.

#### *Conclusion*

The Court holds that the *Dioptics Solar Shield® Ultra* sunglasses do not infringe the '083 patent because prosecution history estoppel estopps Vision Services from claiming a patent design for fitover sunglasses with transparent side lenses. Accordingly, the Court **GRANTS** defendants' motion for partial summary judgment for non-infringement of the '083 patent. The Court further **DENIES** defendants' motion for summary judgment for invalidity of the '083 patent on the grounds of new matter and non-enabling because there are material facts in dispute. Finally, the Court also **DENIES** defendants' motion for summary judgment for invalidity of the '083 patent pursuant to Section 102(b) because the Court finds that, as a matter of law, Vision Services' sales and advertising of the '083 patent sunglasses fell within the statutory time period.

**IT IS SO ORDERED.**