# United States Court of Appeals
# for the Federal Circuit

---

**PACIFIC COAST MARINE WINDSHIELDS LIMITED,**
*Plaintiff-Appellant,*

**v.**

**MALIBU BOATS, LLC, AND TRESSMARK, INC.,**
**doing business as Liquid Sports Marine,**
*Defendants-Appellees,*

AND

**MARINE HARDWARE, INC., MH WINDOWS, LLC,**
AND **JOHN F. PUGH,**
*Defendants-Appellees.*

---

2013-1199

---

Appeal from the United States District Court for the Middle District of Florida in No. 12-CV-0033, Judge John Antoon, II.

---

Decided: January 8, 2014

---

ROBERT E. ROHDE, Rohde & Van Kampen, PLLC, of Seattle, Washington, argued for plaintiff-appellant.

DARIN W. SNYDER, O'Melveny & Myers LLP, of San Francisco, California, argued for all defendants-appellees. With him on the brief for defendants-appellees, Malibu Boats, LLC, et al., were BRIAN BERLINER and STEVEN BASILEO, of Los Angeles, California; and JONATHAN D. HACKER and DEANNA M. RICE, of Washington, DC. On the brief for defendants-appellees, Marine Hardware, Inc., et al., were MARK P. WALTERS and DARIO A. MACHLEIDT, Frommer Lawrence & Haug, LLP, of Seattle, Washington, for

---

Before DYK, MAYER, and CHEN, *Circuit Judges.*

DYK, *Circuit Judge.*

Pacific Coast Marine Windshields Limited ("Pacific Coast") is the assignee of all rights in U.S. Patent No. D555,070 ("the '070 patent") for an ornamental boat windshield design. Pacific Coast brought suit against Malibu Boats, LLC, Marine Hardware, Inc., Tressmark, Inc., MH Windows, LLC, and John F. Pugh (collectively "Malibu Boats") in the Middle District of Florida, alleging infringement. The district court granted Malibu Boats' motion for summary judgment of non-infringement, finding that prosecution history estoppel barred the infringement claim. Pacific Coast appeals. We hold that the principles of prosecution history estoppel apply to design patents, but reverse the district court's summary judgment of non-infringement because the accused infringing design was not within the scope of the subject matter surrendered during prosecution, and remand for further proceedings.

## BACKGROUND

Darren A. Bach, the owner and chief executive officer of Pacific Coast, filed a design patent application on April 27, 2006, claiming an "ornamental design of a marine

windshield with a frame, a tapered corner post with vent holes and without said vent holes, and with a hatch and without said hatch, as shown and described." JA 361 (emphasis removed). The accompanying figures depicted various embodiments of the claimed design with different vent hole configurations. The drawings also showed designs that included and excluded a hatch on the front of the windshield. Shown below are submitted figures representative of the various embodiments.



JA 362, 366-71.

The examiner determined that the multiple embodiments represented five "patentably distinct groups of designs" and issued a restriction requirement, identifying

the five distinct groups of designs as windshields with: (1) four circular holes and a hatch (figure 1); (2) four circular or square holes and no hatch (figures 7 & 12); (3) no holes and a hatch (figure 8); (4) no holes and no hatch (figure 9); and (5) two oval or rectangular holes and a hatch (figures 10 & 11). JA 386. The applicant was required to elect a single group for the pending application although the applicant was entitled to file additional applications for each of the remaining groups.

In response, the applicant elected "Group I, Embodiment 1," corresponding to figure 1 above, depicting four vent holes and a hatch. JA 392. He amended the claim to recite "the ornamental design of a marine windshield with a frame, and a pair of tapered corner posts[,]" removing the original claim language stating "with vent holes and without said vent holes, and with a hatch and without said hatch." JA 390 (emphases removed). The applicant also cancelled figures 7-12, leaving only the embodiment with four circular holes on the corner post and a hatch on the front of the windshield. The amended application issued as the '070 patent on November 13, 2007. As issued, the '070 patent claims "[t]he ornamental design for a marine windshield, as shown and described." JA 170. Figures 1-6 show alternate views of the four-hole embodiment. The inventor assigned all rights in the '070 patent to his wholly owned company, Pacific Coast, in June, 2011.[1] The inventor later obtained a patent for the design

---

[1]    Although the term used is "exclusive license," the agreement is effectively an assignment because it granted "all substantial rights in and to the Patents[,]" including the '070 patent, exclusively to Pacific Coast. JA 139. It is well-established that an exclusive transfer of all rights in a patent is considered an assignment if that is its effect, regardless of its name. *See, e.g.*, *Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891) ("Whether a transfer of a partic-

with no holes in the corner post as a divisional of the originally-filed application, but did not file another divisional application with respect to any of the other embodiments. *See* U.S. Patent No. D569,782.

In 2011, Pacific Coast brought suit in the Middle District of Florida, alleging, inter alia, that Malibu Boats manufactured and sold boat windshields with a design that infringed the '070 patent. Pacific Coast also alleged that Malibu Boats induced others, including customers and distributors, to infringe the '070 patent. The accused infringing design was in a boat windshield with three trapezoidal holes on the corner post, as shown below.



JA 11.

---

ular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions.") (emphasis removed); *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010) ("[A] patent owner may grant an exclusive license to his patents under such terms that the license is tantamount to an assignment of the patents to the exclusive licensee. That happens when the exclusive license transfers 'all substantial rights' in the patents.") (citing *Vaupel Textilmaschinen v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 873-74 (Fed. Cir. 1991)).

The district court granted Malibu Boats' motion for partial summary judgment of non-infringement on the grounds of prosecution history estoppel. The district court found that, during prosecution, the applicant had surrendered the designs reflected in the canceled figures and amended the claim "in order to obtain the patent." JA 9. In holding that the patentee was estopped from asserting infringement against the accused design, the court recognized that "the accused design has one fewer vent hole than the embodiment," but explained that "the accused design is still clearly within 'the territory [surrendered] between the original claim and amended claim.'" JA 12 (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002)). The court also found that the patentee failed to overcome the presumption of prosecution history estoppel. The court entered a judgment of non-infringement based on the finding of prosecution history estoppel, and certified the judgment for appeal pursuant to Fed. R. Civ. P. 54(b).

Pacific Coast appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1). Whether the presumption of prosecution history estoppel precludes a patentee from asserting infringement against an alleged equivalent of an amended claim element is a question of law that we review without deference. *Honeywell Int'l. Inc. v. Hamilton Sundstrand*, 370 F.3d 1131, 1139 (Fed. Cir. 2004) (en banc) (citing *Ranbaxy Pharms., Inc. v. Apotex, Inc.*, 350 F.3d 1235 (Fed. Cir. 2003)). We also review a district court's grant of summary judgment without deference. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002).

DISCUSSION

I

Although treatises[2] and district court decisions going back to 1889[3] have recognized that the concept of prosecution history estoppel applies to design patents as well as utility patents, this issue is one of first impression for our court.

The doctrine of prosecution history estoppel is well established for utility patents. Utility patents may be infringed both literally and under the doctrine of equivalents. For doctrine of equivalents purposes, the accused and claimed elements are equivalent if there are only "insubstantial differences" between them. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39

---

[2]     *See, e.g.*, Donald S. Chisum, Chisum on Patents § 23.05[7] (2013) ("Decisions confirm that a design patent's prosecution history may limit its scope."); 6 John G. Mills et al., Pat. L. Fundamentals § 20:50 (2d ed.) (2013) ("Where the Patent & Trademark Office required restriction among a plurality of embodiments proffered to the Office in a single design applica[]tion, courts have held that the patentee is estopped from asserting that an accused design which corresponds to a nonelected embodiment infringes the elected embodiment . . . .").

[3]     *See, e.g.*, *Australia Vision Servs. Pty. Ltd. v. Dioptics Med. Prods. Inc.*, 29 F. Supp. 2d 1152, 1157 (C.D. Cal. 1998); *Victus Ltd. v. Collezione Europa U.S.A. Inc.*, 48 U.S.P.Q. 2d 1145, 1148-49 (M.D.N.C. 1998); *McGrady v. Aspenglas Corp.*, 487 F. Supp. 859, 861 (S.D.N.Y. 1980); *W.R. Grace & Co. v. W. United States Indus., Inc.*, 180 U.S.P.Q. 40, 47 (C.D. Cal. 1975), *aff'd on other grounds*, 608 F.2d 1214 (9th Cir. 1979); *Stimulant Prods., Inc. v. Vibrex Corp.*, 161 U.S.P.Q. 513, 517 (C.D. Cal. 1969); *MacBeth v. Gillinder*, 54 F. 169, 170 (C.C.E.D. Pa 1889).

(1997). An alternate formulation focuses on whether the "substitute element matches the function, way, and result of the claimed element." *Id.* at 40. *See also Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 612 (1950) (finding equivalence when the "changes which avoid literal infringement are colorable only").

With respect to utility patents, prosecution history estoppel limits a patentee's ability to recover under the doctrine of equivalents, but does not limit literal infringement. The doctrine is founded on the public notice function of patents. The Supreme Court has recognized that "[t]here can be no denying that the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement." *Warner-Jenkinson*, 520 U.S. at 29; *see also Festo*, 535 U.S. at 731 ("A patent holder should know what he owns, and the public should know what he does not."). Consequently, prosecution history estoppel limits the bounds of what a patentee can claim as equivalent by "requir[ing] that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process." *Festo*, 535 U.S. at 733. Where subject matter is surrendered during prosecution, prosecution history estoppel prevents the patentee from "recaptur[ing] in an infringement action the very subject matter surrendered as a condition of receiving the patent." *Id.* at 734.

For design patents, the concepts of literal infringement and equivalents infringement are intertwined. Unlike the provisions defining infringement of a utility patent, the statutory provision on design patent infringement does not require literal identity, imposing liability on anyone who "without license of the owner, (1) applies the patented design, *or any colorable imitation thereof*, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to

which such design or *colorable imitation* has been applied . . . ." 35 U.S.C. § 289 (emphases added).

Under the leading Supreme Court case of *Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871), the test for design patent infringement is whether

> in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Id.* at 528. The Court explained that, if the test for infringement required the accused design to reproduce all elements of the patented design, "[t]here never could be piracy of a patented design, for human ingenuity has never yet produced a design, in all its details, exactly like another, so like, that an expert could not distinguish them." *Id.* at 527; *see also Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992) ("[P]atent infringement can be found for a design that is not identical to the patented design.").

Thus, the test for design patent infringement is not identity, but rather sufficient similarity—whether "the accused design could not reasonably be viewed as so similar to the claimed design that a purchaser familiar with the prior art would be deceived by the similarity between the claimed and accused designs, '"inducing him to purchase one supposing it to be the other."' *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 683 (Fed. Cir. 2008) (quoting *Gorham*, 81 U.S. at 528). We have held that the "colorable imitation" standard of the design patent statute involves the concept of equivalents. Although "the way/function/result test . . . is not directly transferable to design patents, it has long been recognized that the principles of equivalency are applicable." *Lee v.*

*Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988); *see also* Chisum on Patents § 23.05 ("[I]t can be questioned whether there is any need to apply to designs the general distinction between 'literal' infringement of a patent and infringement under the 'doctrine of equivalents.'"). Indeed, Pacific Coast characterized the substantial similarity between the accused designs and the '070 patent as the basis for an infringement claim "under the doctrine of equivalents." JA 142.

Pacific Coast, in its briefs, argued that prosecution history estoppel should not apply to design patents at all.[4]

---

[4]      Pacific Coast also argued that the defendant here was foreclosed from raising the issue of prosecution history estoppel on summary judgment because it is an affirmative defense that was not raised in the pleadings, as required by Rule 8(c) of the Federal Rules of Civil Procedure. Assuming arguendo that prosecution history estoppel is an affirmative defense, the doctrine was adequately pled in the defendants' answers, which stated, "[p]laintiff's claims are barred in whole or in-part by the doctrine[] of . . . estoppel . . . ." JA 228; *see* JA 181; JA 191; JA 201; JA 212. Moreover, the "purpose of such pleading is to give the opposing party notice . . . and a chance to argue" its side of the issue. *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350 (1971). The Eleventh Circuit has held that "[w]hen a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (warning against "hypertechnicality in pleading requirements" and advising that courts "focus, instead, on enforc[ing] the actual purpose of the rule"); a*ccord Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797-98 (11th Cir. 1989) (no prejudice in allowing an affirmative defense to be raised for the first time in a

But at oral argument, Pacific Coast conceded that a patentee should not be able to assert infringement against a particular design that was abandoned during prosecution for reasons of patentability. Oral Argument at 5:14-5:30, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2013-1199.mp3. This concession is well taken. The same principles of public notice that underlie prosecution history estoppel apply to design patents as well as utility patents. Prosecution history estoppel in design patents promotes the "clarity [that] is essential to promote progress." *Festo*, 535 U.S. at 730. Refusing to apply the principles of prosecution history estoppel to design patents would undermine the "definitional and public-notice functions of the statutory claiming requirement." *Warner-Jenkinson*, 520 U.S. at 29. The fact that in design patents, unlike utility patents, the claimed scope is defined by drawings rather than language does not argue against application of prosecution history estoppel principles here. We conclude that the principles of prosecution history estoppel apply to design patents as well as utility patents.

## II

Having determined that the principles of prosecution history estoppel apply to design patents, we consider whether those principles bar the infringement claim in this case. This turns on the answers to three questions: (1) whether there was a surrender; (2) whether it was for reasons of patentability; and (3) whether the accused design is within the scope of the surrender.

---

motion for summary judgment). In this case, we find no prejudice, and Pacific Coast alleges none, resulting from the district court's considering the issue at the summary judgment stage.

A

As to the first, we conclude that there was a surrender of claim scope during prosecution. Here, in determining the scope of the claimed design, "[i]t is the drawings of the design patent that provide the description of the invention." *In re Daniels*, 144 F.3d 1452, 1456 (Fed. Cir. 1998) (citing *In re Klein*, 986 F.2d 1569, 1571 (Fed. Cir. 1993)); *see also* MPEP § 1503.1 ¶ 15.59(II) (8th ed. Rev. 9, Aug. 2012) ("[A]s a rule the illustration in the drawing views is its own best description."). Figures are required in design patent applications because they, not the textual claim, "constitute a complete disclosure of the appearance of the design." 37 C.F.R. § 1.152. In short, while we look primarily to the wording of the claims in utility patents for the purpose of prosecution history estoppel, we must look at the requisite drawings in design patents to determine whether a surrender has occurred.

Here, in response to the examiner's restriction requirement, the applicant amended the claim by cancelling figures associated with all but one of the patentably distinct groups of designs identified by the examiner—the four-hole embodiment—and striking references to alternate configurations from the text. The PTO treated the response as "an election without traverse" and withdrew the unelected designs from consideration. JA 394. Consequently, the issued '070 patent claimed only "[t]he ornamental design for a marine windshield, as shown and described," JA 170, in figures that all depicted four circular vent holes on the corner post. JA 170-74. By cancelling figures showing corner posts with two holes and no holes, the applicant surrendered such designs and conceded that the claim was limited to what the remaining figure showed—a windshield with four holes in the corner post—and colorable imitations thereof.

It does not matter that the surrender involved the cancellation of claims rather than amendment. In *Honeywell Int'l Inc. v. Hamilton Sundstrand*, 370 F.3d 1131, 1144 (Fed. Cir. 2004) (en banc), we held that prosecution history estoppel is not limited to narrowing amendments, but extends as well to claim surrender. *See also Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1325 (Fed. Cir. 2003) (the "addition of [an] independent claim . . . coupled with the clear surrender of the broader subject matter of the deleted original independent claim" narrowed claim scope for prosecution history estoppel purposes). By removing broad claim language referring to alternate configurations and cancelling the individual figures showing the unelected embodiments, the applicant narrowed the scope of his original application, and surrendered subject matter.

B

As to the second question, we conclude that claim scope was surrendered in order to secure the patent, as required by the Supreme Court's decision in *Festo*. Here, the surrender was not made to avoid prior art but because of a restriction requirement under 35 U.S.C. § 121. Thus, the surrender was not made for reasons of patentability (for example, anticipation, obviousness, or patentable subject matter). However, the surrender was made to secure the patent.

In contrast to utility patents, "a design patent application may only include a single claim." MPEP § 1503.1 ¶ 15.61(III) (8th ed. Rev. 9, Aug. 2012); *see also In re Rubinfield*, 207 F.2d 391, 396 (CCPA 1959) ("We find no sound reason for disturbing the long-standing practice of the Patent Office, embodied in Rule 153, which limits design applications to a single claim."). In light of that requirement, if an application for a design patent includes more than one patentable design, the PTO must require

the applicant to restrict his claims to a single inventive design under 35 U.S.C. § 121. Thus, in design patents, unlike utility patents, restriction requirements cannot be a mere matter of administrative convenience. Here, the examiner imposed a restriction requirement on the ground that the different drawings showed "patentably distinct groups of designs," contravening the requirement that design patents must claim only one design. JA 386. The examiner identified the specific design groups and associated figures, giving the applicant the option to elect one group.

Pacific Coast argues, however, that only surrenders to avoid prior art are within the doctrine. We think that the doctrine is broader than that. The Court has held that "[e]stoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope," expressly stating that "a narrowing amendment made to satisfy *any* requirement of the Patent Act may give rise to an estoppel." *Festo*, 535 U.S. at 736 (emphasis added). In *Festo*, the Court explicitly addressed, and rejected, arguments similar to those raised by Pacific Coast here, explaining that the rationale behind prosecution history estoppel "does not cease simply because the narrowing amendment, submitted to secure a patent, was for some purpose other than avoiding prior art." *Id.* at 736. Here, we think that, in the design patent context, the surrender resulting from a restriction requirement invokes prosecution history estoppel if the surrender was necessary, as in *Festo*, "to secure the patent." *Id.* We express no opinion as to whether the same rule should apply with respect to utility patents, an issue not resolved by our prior cases.[5]

---

[5]     *See, e.g., Bayer Aktiengesellschaft v. Duphar Int'l Research*, 738 F.2d 1237, 1243 (Fed. Cir. 1984)

### C

The final question is whether the accused design is within the scope of the surrender. Prosecution history estoppel only bars an infringement claim if the accused design fell within the scope of the surrendered subject matter. *See Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1578 (Fed. Cir. 1997) ("Once prosecution history estoppel limits the scope of a patent, the patentee may not recover for infringement where infringement would require an equivalence between a claim element and an aspect of the accused item that falls within the estoppel."). Determining the reach of prosecution history estoppel thus "requires an examination of the subject matter surrendered by the narrowing amendment." *Festo*, 535 U.S. at 737.

Here, the surrendered designs included windshields with two holes on the corner post. The district court held that after "[c]omparing the Defendants' accused design with the patented design and the canceled embodiments, it is clear that the accused design is within the territory between the original claim and the amended claim." JA 10. Although the accused design had a three-hole configuration and the originally-claimed design did not include a three-hole configuration, the court found that "the accused design is still clearly within the 'territory between the original claim and the amended claim[,]'" *i.e.*, between the claimed four-hole embodiment and the surrendered two-hole embodiment. JA 12 (quoting *Festo*, 535 U.S. at 740).

Malibu Boats similarly argues that by abandoning a design with two holes and obtaining patents on designs

---

("[L]imiting the claims because of a restriction requirement, as occurred here, would not necessarily invoke file history estoppel.").

with four holes and no holes, the applicant abandoned the range between four and zero. *See Biagro Western Sales, Inc. v. Grow More Inc.*, 423 F.3d 1296, 1306-07 (Fed. Cir. 2005) (prosecution history estoppel barred infringement claim against accused fertilizer with sixty percent concentration of phosphorous-containing salts where thirty to forty percent concentration limitation was added to patent claim during prosecution). However, this range concept does not work in the context of design patents where ranges are not claimed, but rather individual designs. Claiming different designs does not necessarily suggest that the territory between those designs is also claimed. As the defendant conceded during oral argument, the record does not show that the submitted figures claimed "a design . . . that has zero *to* four holes." Oral argument at 32:01-32:10, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 13-1199.mp3. The applicant surrendered the claimed design with two holes on the windshield corner post, but neither submitted nor surrendered any three-hole design. The record only reflects the surrender of the two-hole embodiment.

We note that the defendant here did not argue that the scope of the surrendered two-hole embodiment extended to the three-hole embodiment because the three-hole embodiment was not colorably different from the two-hole embodiment. At oral argument, the defendant disclaimed the theory that the three-hole design was a colorable imitation of the surrendered two-hole embodiment. Under these circumstances, we need not decide whether the scope of the surrender is measured by the colorable imitation standard. Since the patentee here does not argue that the accused design was within the scope of the surrendered two-hole embodiment, no presumption of prosecution history estoppel could arise. We hold that prosecution history estoppel principles do not bar Pacific

Coast's infringement claim, and remand for further proceedings.[6]

**REVERSED AND REMANDED**

---

[6]  In its motion for summary judgment, Malibu Boats raised other grounds for a finding of non-infringement. The district court did not reach these issues, and neither do we.