# United States Court of Appeals for the Federal Circuit

---

**CURVER LUXEMBOURG, SARL,**
*Plaintiff-Appellant*

**v.**

**HOME EXPRESSIONS INC.,**
*Defendant-Appellee*

---

2018-2214

---

Appeal from the United States District Court for the District of New Jersey in No. 2:17-cv-04079-KM-JBC, Judge Kevin McNulty.

---

Decided: September 12, 2019

---

MICHAEL ANTHONY NICODEMA, Greenberg Traurig, LLP, Florham Park, NJ, argued for plaintiff-appellant. Also represented by JASON HARRIS KISLIN, BARRY SCHINDLER.

STEVEN M. AUVIL, Squire Patton Boggs (US) LLP, Cleveland, OH, argued for defendant-appellee. Also represented by JEREMY WILLIAM DUTRA, Washington, DC.

ERIK STALLMAN, Samuelson Law, Technology & Public Policy Clinic, University of California, Berkeley School of Law, Berkeley, CA, for amicus curiae Open Source

Hardware Association.  Also represented by JENNIFER M. URBAN.

———————————

Before CHEN, HUGHES, and STOLL, *Circuit Judges.*

CHEN, *Circuit Judge*

Plaintiff-appellant Curver Luxembourg, SARL (Curver) is the assignee of U.S. Design Patent No. D677,946 ('946 patent), entitled "Pattern for a Chair" and claiming an "ornamental design for a pattern for a chair."  The design patent's figures, however, merely illustrate the design pattern disembodied from any article of manufacture.  Curver sued defendant-appellee Home Expressions Inc. (Home Expressions) in the United States District Court for the District of New Jersey, alleging that Home Expressions made and sold baskets that incorporated Curver's claimed design pattern and thus infringed the '946 patent.  Home Expressions moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that its accused baskets could not infringe because the asserted design patent was limited to chairs only.  The district court agreed with Home Expressions and granted the motion.  The question on appeal is whether the district court correctly construed the scope of the design patent as limited to the illustrated pattern applied to a chair, or whether the design patent covers any article, chair or not, with the surface ornamentation applied to it.  Because we agree with the district court that the claim language "ornamental design for a pattern for a chair" limits the scope of the claimed design in this case, we affirm.

BACKGROUND

The '946 patent was filed in 2011 and claims an overlapping "Y" design, as illustrated in Figure 1 below. J.A. 24. The title, description of figures, and claim of the '946 patent all consistently recite a "pattern for a chair." *Id.* But none of the figures illustrate a design being applied to a chair.



FIG. 1

The term "chair" first appeared through amendment during prosecution. Curver originally applied for a patent directed to a pattern for "furniture," not a chair specifically. The original title was "FURNITURE (PART OF-)." J.A. 66. The original claim recited a "design for a furniture part." J.A. 67. And each of the figures was described as illustrating a "design for a FURNITURE PART." J.A. 66–67. None of the figures illustrated a chair, any furniture, or any furniture part.

The Patent Office allowed the claim but objected to the title, among other things. The examiner stated that under 37 C.F.R. § 1.153 and the Patent Office's Manual of Patent Examining Procedure (MPEP) § 1503(I), the title must designate a "particular article" for the design. Under these provisions, the examiner found that the title's use of "Part of" and the specification's use of "Part" were "too vague" to

constitute an article of manufacture.  J.A. 61.  To remedy this problem, the examiner suggested that the title be amended to read "Pattern for a Chair," and that "[f]or consistency," the "title [] be amended throughout the application." *Id.* (noting that "[t]he claim in a design patent must be directed to the design for an article" under 35 U.S.C. § 171).  Curver adopted the examiner's suggestion, replacing the original title with "Pattern for a Chair" and replacing "furniture part" with "pattern for a chair" in the claim and figure descriptions to be consistent with the amendment to the title.  J.A. 66–67.  Referring to these amendments, Curver acknowledged that "the title and the specification have been amended as required in the Office Action."  J.A. 69.  Curver did not amend the figures to newly illustrate a chair.  The examiner accepted these amendments and allowed the application.

## DISTRICT COURT PROCEEDINGS

Home Expressions makes and sells baskets that incorporate an overlapping "Y" design similar to the pattern disclosed in the '946 patent, as shown below.  J.A. 5.



Curver filed a complaint against Home Expressions in district court accusing these basket products of infringing the '946 patent. Home Expressions filed a motion to dismiss Curver's complaint under Rule 12(b)(6) for failing to set forth a plausible claim of infringement. The district court granted the motion.

To determine whether the complaint stated a plausible infringement claim, the district court conducted a two-step analysis. First, it construed the scope of the design patent. Second, it compared the accused products to the claimed design as construed to determine whether the products infringed. Under the "ordinary observer" test, an accused product infringes a design patent if "in the eye of an ordinary observer . . . two designs are substantially the same," such that "the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other . . . ." *Gorham Co. v. White*, 81 U.S. 511, 528 (1871) (articulating the "ordinary observer" test for design patent infringement); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008) (en banc) (making the "ordinary observer" test in *Gorham* the sole test for determining design patent infringement). At the first step, the district court construed the scope of the '946 patent to be limited to the design pattern illustrated in the patent figures as applied to a chair, explaining that "[t]he scope of a design patent is limited to the 'article of manufacture'— *i.e.*, the product—listed in the patent." J.A. 16. At the second step, the district court found that an ordinary observer would not purchase Home Expressions's *basket* with the ornamental "Y" design believing that the purchase was for an ornamental "Y" design applied to a *chair*, as protected by the '946 patent. Accordingly, the district court dismissed the complaint pursuant to Rule 12(b)(6) for failing to set forth a plausible claim of infringement.

Curver timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

STANDARD OF REVIEW

We review a decision to grant a motion to dismiss under regional circuit law. *C&F Packing Co., v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed. Cir. 2000). Under Third Circuit law, we review a district court's grant of a motion to dismiss under Rule 12(b)(6) *de novo*. *Sands v. McCormick*, 502 F.3d 263, 267 (3d Cir. 2007).

DISCUSSION

On appeal, Curver argues that in determining that the scope of its design patent was limited to a chair, the district court improperly relied on claim language reciting a "pattern for a chair," rather than focusing on the figures which are devoid of any chair illustrations. Given that the figures fail to illustrate any particular article of manufacture,[1]

---

[1]    In its Reply, Curver argues that the figures depict a "three-dimensional panel structure that includes the ornamental Y pattern," and that under *Samsung Electronics Co. v. Apple Inc.*, 137 S. Ct. 429, 435 (2016), this "panel" provides the requisite "article of manufacture" because it is a "component" of a product. Appellant's Reply Br. at 6–7. This is the first time on appeal Curver attempts to identify any article of manufacture in the drawings, and thus we find this argument waived. In any event, we note that we are unpersuaded that Curver's purported panel constitutes the type of "component" contemplated by *Samsung* as being an "article of manufacture." In *Samsung*, the components covered by Apple's design patents were parts of a concrete "multicomponent" smartphone product, not a surface ornamentation disembodied from any identifiable product, as here. 137 S. Ct. at 433–35. Taking Curver's argument to its logical extreme, any applicant could potentially obtain a patent on a two-dimensional graphic so long as it is illustrated with some thickness such that it could

Curver's argument effectively collapses to a request for a patent on a surface ornamentation design *per se*. As Curver itself acknowledges, our law has never sanctioned granting a design patent for a surface ornamentation in the abstract such that the patent's scope encompasses every possible article of manufacture to which the surface ornamentation is applied. Oral Arg. at 10:41–11:04. We decline to construe the scope of a design patent so broadly here merely because the referenced article of manufacture appears in the claim language, rather than the figures.

This is a case of first impression. Under 35 U.S.C. § 171, federal statute permits patent protection for a "new, original and ornamental design for an article of manufacture." To define the scope of a design patent, we have traditionally focused on the figures illustrated in the patent. *See, e.g.*, *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 702 (Fed. Cir. 2014) ("[I]n design patents, unlike utility patents, the claimed scope is defined by drawings rather than language . . . ."); *In re Daniels*, 144 F.3d 1452, 1456 (Fed. Cir. 1998) ("It is the drawings of the design patent that provide the description of the invention."); *In re Klein*, 987 F.2d 1569, 1571 (Fed. Cir. 1993) ("As is usual in design applications, there is no description other than the drawings."); *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988) ("The claim at bar, as in all design cases, is limited to what is shown in the application drawings."). But critically, none of these cases confront the atypical situation we have here, where all of the drawings fail to depict an article of manufacture for the ornamental design. Thus, we address for the first time whether claim language specifying an article of manufacture can limit the scope of a design patent, even if that article of manufacture is not actually illustrated in the

---

constitute a panel "component" that is part of a larger product.

figures. Given that long-standing precedent, unchallenged regulation, and agency practice all consistently support the view that design patents are granted only for a design applied to an article of manufacture, and not a design *per se*, we hold that claim language can limit the scope of a design patent where the claim language supplies the only instance of an article of manufacture that appears nowhere in the figures.

In *Gorham*, the leading design patent case decided more than one hundred years ago, the Supreme Court stated that "[t]he acts of Congress which authorize the grant of patents for designs" contemplate "not an abstract impression, or picture, but an aspect given to those objects mentioned in the acts." 81 U.S. at 524. In characterizing the invention in a design patent, the Supreme Court focused not only on the distinctiveness of the design pattern itself, but how the design transformed the appearance of the "article of manufacture" to which the design was applied. *Id.* at 524–25 ("And the thing invented or produced, for which a patent is given, is that which gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form.").

Decades later, our predecessor court reinforced *Gorham*'s application-focused view of design patents, stating that "it is the *application of the design to an article of manufacture* that Congress wishes to promote, and an applicant has not reduced his invention to practice and has been of little help to the art if he does not teach the manner of applying his design." *In re Schnell*, 46 F.2d 203, 209 (CCPA 1931) (emphasis added).

Agency practice is in line with this precedent. For over one hundred years, the Patent Office has made clear that it does not grant patents for designs disembodied from an article of manufacture. In *Ex parte Cady*, an artist applied for a design patent on an illustration of "Peter Rabbit," a character in a well-known children's book. 1916 Dec.

Comm'r Pat. 62 (1916). The Commissioner of Patents upheld the examiner's rejection of the application, explaining:

> [a] disembodied design or a mere picture is not the subject of [design] patent, and it follows that the specification must not so indicate . . . . The invention is not the article and is not the design *per se*, but is the design *applied*.

*Id.* at 68 (emphases in original). Consistent with precedent and agency practice, the Patent Office promulgated 37 C.F.R. § 1.153[2] in 1959, specifying rules for the form and content of design patent applications. Curver, who does not challenge this regulation, is bound by it here. Section 1.153(a) provides:

> The title of the design must designate the particular article. No description, other than a reference to the drawing, is ordinarily required. The claim shall be in formal terms to the ornamental design for the article (specifying name) *as shown, or as shown and described*.

§ 1.153(a) (emphasis added). This regulation tells us two things: 1) the claim is not directed to a design *per se*, but a design for an identified article, and 2) the scope of the design claim can be defined either by the figures ("as shown") or by a combination of the figures and the language of the design patent ("as shown and described"). *Id.* Thus, to obtain a design patent, § 1.153(a) requires that the design be tied to a particular article, but this regulation permits claim language, not just illustration alone, to identify that article.

---

[2]    We discuss the pre-America Invents Act (AIA) version of 37 C.F.R. § 1.153 because the '946 patent was filed on April 8, 2011, before September 16, 2012, the effective date of the AIA.

The Patent Office's guidelines governing examination procedure make clear that a design patent will not be granted unless the design is applied to an article of manufacture. The MPEP defines "the subject matter which is claimed [a]s the design embodied in or *applied to an article of manufacture (or portion thereof)*" and explains that the "[d]esign is inseparable from the article to which it is applied and cannot exist alone merely as a scheme of surface ornamentation." MPEP § 1502 (emphasis added). Furthermore, these guidelines direct examiners to reject under 35 U.S.C. § 171 a claim "that is not applied to or embodied in an article of manufacture." MPEP § 1504.01. As the MPEP suggests, identifying the article of manufacture serves to notify the public about the general scope of protection afforded by the design patent. *See* MPEP § 1503.01(I) (amended November 2015) ("The title of the design identifies the article in which the design is embodied by the name generally known and used by the public and may contribute to defining the scope of the claim."). If we adopted a design *per se* rule, "the title and claim language would provide no useful information at all." Sarah Burstein, *The Patented Design*, 83 TENN. L. REV. 161, 212 (2015). In contrast, tying the design pattern to a particular article provides more accurate and predictable notice about what is and is not protected by the design patent. *See id.*[3]

---

[3]    Limiting the scope of a design patent based on disclosed articles of manufacture also promotes the administrability of the examination process by imposing practicable limits on prior art searching, which would otherwise be unduly time-consuming. *Id.* Given that inventors of creative designs can seek protection through copyright, placing such burdens on the patent system seems particularly unnecessary. *See Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017)

On appeal, Curver argues that the district court improperly applied prosecution history estoppel to limit the scope of its design patent to a chair by focusing on the design patent's text instead of the figures. Curver further notes that because the originally-filed claim reciting a "design for a furniture part" was allowed by the examiner before the claim was amended to recite a "pattern for a chair," Curver did not surrender the broader scope encompassed by its original claim. Appellant's Opening Br. at 18–21. While we agree that courts typically look to the figures to define the invention of the design patent, it is inappropriate to ignore the only identification of an article of manufacture just because the article is recited in the design patent's text, rather than illustrated in its figures. Here, the prosecution history shows that Curver amended the title, claim, and figure descriptions to recite "pattern for a chair" in order to satisfy the article of manufacture requirement necessary to secure its design patent. The examiner found that Curver's original title of "FURNITURE (PART OF-)" was "too vague" to constitute a "particular article" under § 1.153(a) and suggested that the title be amended to read "Pattern for a Chair." J.A. 61. Curver did not dispute the validity of that requirement and instead amended the title, claim, and figure descriptions to clarify that the pattern was for a chair "as required in the Office Action." J.A. 69. The Patent Office accepted these amendments and did not require Curver to supply new drawings illustrating the ornamental design applied to a chair. Because the "pattern for a chair" amendments were made pursuant to § 1.153 requiring the designation of a particular article of manufacture, and this requirement was necessary to secure the patent, we hold that the scope of the '946 patent is limited by those amendments, notwithstanding the

(stating that copyright protects "pictorial, graphic, or sculptural feature[s]" that are separable from a useful article).

applicant's failure to update the figures to reflect those limiting amendments.

Curver additionally argues that the district court misapplied the test for determining infringement based on *In re Glavas*, 230 F.2d 447, 450 (CCPA 1956). According to Curver, *Glavas* suggested that a surface ornamentation for an article of manufacture can be anticipated by a prior art article that shares the same surface ornamentation, even though the prior art article is completely unrelated, i.e., non-analogous art, to the article shown in the design patent. Appellant's Opening Br. at 15–18. Curver thus reads *Glavas* as stating that the underlying article to which a surface ornamentation is applied is of no moment when considering anticipation. We have historically used the same test to determine anticipation and infringement. *See, e.g., Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889) ("That which infringes, if later, would anticipate if earlier."); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009) ("[I]t has been well established for over a century that the same test must be used for both infringement and anticipation . . . ."). Seeking to extend Curver's asserted anticipation rationale from *Glavas* to infringement here, Curver argues that a product that applies a design pattern to a basket can infringe a design patent that claims the same design pattern "for a chair." We disagree because we are unpersuaded that the statement in *Glavas* about anticipation necessarily impacts our infringement decision.

First, we note that the statement about anticipation in *Glavas* is dictum and thus not binding. Because the *Glavas* court was asked only to review a determination of

*obviousness*,[4] the statement about *anticipation* was unnecessary to reach its holding about obviousness.

Second, *Glavas* does not appear to go as far as Curver would like. The relevant portion of *Glavas* cited by Curver contemplated anticipation by a prior art article having a different "use" than the article illustrated in the design patent but nevertheless sharing "substantially the same appearance." *Glavas*, 230 F.2d at 450 ("It is true that the use to which an article is to be put has no bearing on its patentability as a design and that if the prior art discloses any article of substantially the same appearance as that of an applicant, it is immaterial what the use of such article is. Accordingly, so far as anticipation by a single prior art disclosure is concerned, there can be no question as to nonanalogous art in design cases."). Contrary to Curver's assertion, *Glavas*'s dictum did not state that a design patent disclosing a surface ornamentation applied to a given article (e.g., an ornamental drawing on the side of a flower pot) can be anticipated by an unrelated article having a very different physical appearance and form (e.g., cover of a laptop computer). Here, there is no dispute that a basket embodying a particular ornamental pattern is not substantially similar in appearance to a chair embodying that same pattern such that the former would infringe a design patent covering the latter. *See* Oral Arg. at 6:26–6:59.

Third, even if *Glavas*'s dictum permitted anticipation by articles of manufacture that looked distinctly different from the article illustrated in the design patent, that dictum is subject to our en banc decision in *Egyptian Goddess*, which changed the standard for determining design patent

---

[4]    Specifically, the *Glavas* court was asked to address whether a prior art reference showing a pillow could serve as analogous art for purposes of rendering obvious a design patent application for a swimming "float." *Glavas*, 230 F.2d at 449.

infringement to focus solely on the "ordinary observer" test. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (holding that "the 'point of novelty' test should no longer be used in the analysis of a claim of design patent infringement" and that the "sole test" should be "the 'ordinary observer' test" based on substantial visual similarity between the accused product and claimed design). Because we use the same test for determining infringement and anticipation, the ordinary observer test is now the sole controlling test for determining anticipation of design patents too. *Int'l Seaway Trading Corp.*, 589 F.3d at 1240 (holding that in light of *Egyptian Goddess*, "we now conclude that the ordinary observer test must logically be the sole test for anticipation as well"). To the extent *Glavas*'s dictum discussing anticipation is in tension with *Egyptian Goddes*s, that dictum must give way to the ordinary observer test, which controls for purposes of Curver's appeal in this design patent infringement case. Under this ordinary observer test, Curver does not dispute that the district court correctly dismissed Curver's claim of infringement, for no "ordinary observer" could be deceived into purchasing Home Expressions's baskets believing they were the same as the patterned chairs claimed in Curver's patent. *See* Oral Arg. at 6:26–6:59. Thus, for all of the above reasons, we find that Curver's reliance on *Glavas* lacks merit.

## CONCLUSION

We have considered Curver's remaining arguments and find them unpersuasive. Accordingly, we affirm the district court's grant of Home Expressions's motion to dismiss the complaint for failure to state a plausible claim of design patent infringement.

## **AFFIRMED**

### COSTS

No costs.