**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARCIA STEIN; RODOLFO BONE, Qui Tam Relators; ex rel. United States of America, | No.22-15862 |
| *Plaintiffs-Appellants*, | D.C. Nos. |
| and | 3:16-cv-05337-EMC |
| UNITED STATES OF AMERICA, | 3:13-cv-03891-EMC |
| *Plaintiff*, | |
| v. | OPINION |
| KAISER FOUNDATION HEALTH PLAN, INC., a California corporation; KAISER FOUNDATION HOSPITALS, a California corporation; KAISER FOUNDATION HEALTH PLAN OF COLORADO, A Colorado Corporation; KAISER FOUNDATION HEALTH PLAN OF GEORGIA, INC., a Georgia corporation; KAISER FOUNDATION HEALTH PLAN OF THE MID-ATLANTIC STATES, INC., a Maryland corporation; KAISER | |

FOUNDATION HEALTH PLAN OF
THE NORTHWEST, an Oregon
corporation; KAISER FOUNDATION
HEALTH PLAN OF WASHINGTON,
a Washington corporation;
PERMANENTE MEDICAL GROUP,
INC., a California corporation;
SOUTHERN CALIFORNIA
PERMANENTE MEDICAL GROUP;
COLORADO PERMANENTE
MEDICAL GROUP, a Colorado
corporation; SOUTHEAST
PERMANENTE MEDICAL GROUP;
HAWAII PERMANENTE MEDICAL
GROUP; MID-ATLANTIC
PERMANENTE MEDICAL GROUP;
NORTHWEST PERMANENTE, P.C.;
GROUP HEALTH PERMANENTE;
KAISER PERMANENTE,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Submitted June 26, 2024[*]
Seattle, Washington

Filed September 24, 2024

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: Mary H. Murguia, Chief Judge, and Johnnie B. Rawlinson, Milan D. Smith, Jr., Jacqueline H. Nguyen, Bridget S. Bade, Kenneth K. Lee, Danielle J. Forrest, Patrick J. Bumatay, Gabriel P. Sanchez, Roopali H. Desai and Anthony D. Johnstone, Circuit Judges.

Opinion by Judge Forrest;
Concurrence by Judge Forrest

## SUMMARY[**]

### False Claims Act

Reversing in part the district court's dismissal of an action under the False Claims Act for lack of jurisdiction under the Act's first-to-file rule, the en banc court overruled circuit precedent, held that the first-to-file rule is not jurisdictional, and remanded to the three-judge panel for further proceedings.

Plaintiffs sued various Kaiser-related entities alleging Medicare fraud. The district court dismissed the action as barred by the first-to-file rule, 31 U.S.C. § 3730(b)(5), because it related to earlier-filed pending actions against the same defendants or other Kaiser-related entities. The three-judge panel affirmed, applying circuit precedent that the first-to-file rule is jurisdictional.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Acknowledging a circuit split, the en banc court overruled *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015) (en banc), and *United States ex rel. Hughes Aircraft Co.*, 243 F.3d 1181 (9th Cir. 2001), and held that the first-to-file rule is not jurisdictional. Applying the Supreme Court's more recent holding that a statutory bar is jurisdictional only if Congress clearly states that it is, the en banc court held that the first-to-file rule is not jurisdictional because § 3730(b)(5) does not use the term "jurisdiction" or include any other textual clue that points to jurisdiction, unlike other provisions in the False Claims Act that use explicitly jurisdictional language.

Concurring, Judge Forrest, joined by Judge Bumatay, wrote that the court should discard its "dicta-is-binding" rule because this rule is burdensome and misguided. Judge Forrest wrote that in *Hughes*, the court labeled the first-to-file rule as jurisdictional with no explanation. Then, sitting en banc in *Hartpence*, the court cited *Hughes* and again summarily proclaimed that the first-to-file rule was jurisdictional. Judge Forrest wrote that the three-judge panel in this case should have been able to analyze the issue without constraint, rather than feeling duty bound to follow *Hughes* and *Hartpence* despite their tension with Supreme Court precedent.

**COUNSEL**

William K. Hanagami (argued), Hanagami Law APC, Incline Village, Nevada; Abram J. Zinberg, The Zinberg Law Firm APC, Huntington Beach, California; for Plaintiffs-Appellants.

Shiwon Choe and Benjamin J. Wolinsky, Assistant United States Attorneys, United States Department of Justice, Office of the United States Attorney, San Francisco, California, for Plaintiff United States of America.

Dimitri D. Portnoi (argued), David M. Deaton, Stephen M. Sullivan, Caitlin M. Bair, and Kyle M. Grossman, O'Melveny & Myers LLP, San Francisco, California; K. Lee Blalack, II, O'Melveny & Myers LLP, Washington, D.C.; for Defendants-Appellees.

**OPINION**

FORREST, Circuit Judge:

Plaintiffs Marcia Stein and Rodolfo Bone brought a False Claims Act (FCA) action against various Kaiser-related entities[1] alleging Medicare fraud. The district court dismissed plaintiffs' lawsuit as barred by the FCA's first-to-file rule because it "related" to earlier-filed, pending FCA actions against the same defendants named in this action or other Kaiser-related entities. *See* 31 U.S.C. § 3730(b)(5). A three-judge panel of our court affirmed, applying our

---

[1] Kaiser is a trade name referring to a nationwide integrated healthcare provider consisting of Kaiser Health Plans, Permanente Medical Groups, and hospitals.

precedent that the FCA's first-to-file rule is jurisdictional. *Stein v. Kaiser Found. Health Plan, Inc.*, No. 22-15862, 2024 WL 107099, at \*1–2 (9th Cir. Jan. 10, 2024) (citing *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015) (en banc)). We took this case en banc and now overrule this jurisdictional precedent.

The FCA's first-to-file rule states: "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). Two decades ago, we labeled this rule "jurisdictional" without any analysis. *United States ex rel. Lujan v. Hughes Aircraft Co.* (*Hughes*), 243 F.3d 1181, 1186–87 (9th Cir. 2001). Then, sitting en banc in *Hartpence*, we cited *Hughes* and reiterated that we "treat the first-to-file bar as jurisdictional." 792 F.3d at 1130. But we again neglected to provide any analysis. Simply put, the nature of the first-to-file rule was hardly part of our consideration of these cases.

Since *Hughes* and *Hartpence*, the Supreme Court has repeatedly cautioned against the "profligate use of the term 'jurisdiction.'" *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). Just last year, the Court again sought "to bring some discipline" to the overly expansive and "sometimes-loose use" of this term. *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 298 (2023) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). The Court has instructed that a narrow rule governs: A statutory bar is jurisdictional "only if Congress 'clearly states' that it is." *Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023) (quoting *Boechler, P.C. v. Comm'r*, 596 U.S. 199, 203 (2022)); *see also Auburn Reg'l Med. Ctr.*, 568 U.S. at 153 (emphasizing the need for a "clear

statement" from Congress); *Wilkins v. United States*, 598 U.S. 152, 156–59 (2023) (same).

Applying the Court's clear-statement rule, we now conclude that the FCA's first-to-file rule is not jurisdictional. As a starting point, § 3730(b)(5) does not use the term "jurisdiction." Rather, the text speaks only to *who* may bring an action and *when*. It says nothing about the "court's adjudicatory authority." *Santos-Zacaria*, 598 U.S. at 421. Nor does it include any other textual clue that points to jurisdiction.

By contrast, other provisions in the FCA use explicitly jurisdictional language. For example, § 3730(e) enumerates several different contexts in which "[n]o court shall have jurisdiction over an action brought under subsection (b)," such as actions against members of the armed forces or against certain government officials in specified circumstances. 31 U.S.C. 3730(e). Likewise, § 3732— which itself is titled False Claims Jurisdiction—identifies which judicial districts have jurisdiction over specific FCA actions and provides for supplemental federal jurisdiction over state claims. *Id.* § 3732(a)–(b).

"Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Kucana v. Holder*, 558 U.S. 233, 249 (2010) (alteration omitted) (quoting *Nken v. Holder*, 556 U.S. 418, 430 (2009)). That is particularly true here, where all the provisions referenced were added in 1986 as part of an overhaul of the FCA. False Claims Amendments Act of 1986, Pub. L. No. 99-562, §§ 3, 6, 100 Stat. 3153, 3155, 3157, 3158. Because Congress used different terms, we

presume different intents, especially when those differences show up in provisions "enacted as part of a unified overhaul of judicial review procedures." *Nken*, 556 U.S. at 431.

Four of our sister circuits agree that the FCA's first-to-file rule is not jurisdictional. *See United States ex rel. Bryant v. Cmty. Health Sys., Inc.*, 24 F.4th 1024, 1036 (6th Cir. 2022); *United States v. Millenium Lab'ys, Inc.*, 923 F.3d 240, 248–51 (1st Cir. 2019); *United States ex rel. Hayes v. Allstate Ins. Co.*, 853 F.3d 80, 85–86 (2d Cir. 2017) (per curiam); *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 119–21 (D.C. Cir. 2015). Notably, the First and Sixth Circuits previously held that this rule was jurisdictional, but reversed course as the Court's clear-statement rule developed. *See Millenium Lab'ys*, 923 F.3d at 248–51 (explaining that *Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 575 U.S. 650 (2015), casts doubt on the prior holding that the rule was jurisdictional by "'address[ing] . . . the first-to-file bar on decidedly nonjurisdictional terms'" (quoting *Heath*, 791 F.3d at 121 n.4)); *Bryant*, 24 F.4th at 1036 (same).

Three other circuits have held that the first-to-file rule is jurisdictional. *See United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 203 (4th Cir. 2017); *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376 (5th Cir. 2009); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004). However, like *Hughes* and *Hartpence*, these cases predate the Supreme Court's reinvigoration of the clear-statement rule and did not engage in any independent analysis of the jurisdictional question. In fact, the Tenth Circuit relied exclusively on our bare assertion in *Hughes*. *See Grynberg*, 390 F.3d at 1278. Therefore, the circuit split, which exists no matter what we do today, does not give us pause. We conclude there simply

is no meaningful authority supporting the conclusion that the FCA's first-to-file rule is jurisdictional.

When our law is wrong, it is our duty to correct it. This case brings to light an error in our caselaw. All we do today as an en banc court is bring ourselves in line with current Supreme Court doctrine. We **REVERSE IN PART** the district court's holding that it lacked jurisdiction over plaintiffs' case under the FCA's first-to-file rule, and we **REMAND** to the three-judge panel of this court for further proceedings consistent with this opinion.

---

FORREST, Circuit Judge, concurring, with whom BUMATAY, Circuit Judge, joins:

Overruling bad law is good but getting it right in the first place is better. This case demonstrates that our dicta-is-binding rule is burdensome and misguided. *See Barapind v. Enomoto*, 400 F.3d 744, 750–51 (9th Cir. 2005) (en banc) (per curiam). But even more troubling, it lacks legal foundation. We should discard it because it causes unnecessary inefficiency and wastes resources, as it did here, and because it is contrary to the common-law tradition of judging, the jurisprudence of the Supreme Court and every other circuit court in the nation, and the Constitution.

## I.

We established that the False Claims Act's (FCA) first-to-file rule, 31 U.S.C. § 3730(b)(5), is jurisdictional seemingly without care or thought. First, in *United States ex rel. Lujan v. Hughes Aircraft Co*. (*Hughes*), 243 F.3d 1181, 1186–87 (9th Cir. 2001), we labeled this rule "jurisdictional" with no explanation. Then, sitting en banc over a decade

later, we cited *Hughes* and again summarily proclaimed that we "treat the first-to-file bar as jurisdictional." *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1130 (9th Cir. 2015) (en banc). In neither case did we analyze the jurisdictional question. In every other circuit, a future three-judge panel could have analyzed this issue without constraint. But not here. The three-judge panel in this case felt duty bound to apply our prior pronouncement despite its tension with Supreme Court precedent, and the en banc court had to convene to tidy up the law.

## II.

As appellate judges, we show our work. We give reasons to explain our decisions. Still, we are not "freakishly austere mouthpiece[s] of the law." Neil Duxbury, *The Intricacies of Dicta and Dissent* 4 (2021). Sometimes, in explaining a decision, we digress. *Id.* Enter dicta. Shorthand for *obiter dictum*—Latin for "a remark by the way"—dictum is "an observation or remark made by a judge in pronouncing an opinion upon a cause, concerning some rule, principle, or application of law, or the solution of a question suggested by the case at bar, but not necessarily involved in the case or essential to its determination." *Dictum*, Black's Law Dictionary (1st ed. 1891). Put another way, as explained in 1854, dicta are simply "judicial opinions expressed by the judges on points that do not necessarily arise in the case." *Dictum (Obiter Dictum or Dicta)*, Bouvier Law Dictionary (2012).

Dicta have been non-binding for centuries. In 1617, Sir Francis Bacon declared dicta "the vapours and fumes of law." Francis Bacon, *The Lord Keeper's Speech in the Exchequer*, *in* 2 *The Works of Francis Bacon* 478 (B. Montagu ed., 1887). As early as 1808, the U.S. Supreme

Court noted that a lower court was bound by a statement that "was not a mere *dictum*, but the very ground of [another] court's decision," *Alexandria v. Patten*, 8 U.S. (4 Cranch) 317, 319 (1808), and cautioned that "[i]t is extremely dangerous to take general *dicta* upon supposed cases not considered in all their bearings, and, at best, inexplicitly stated as establishing important law principles," *Alexander v. Balt. Ins. Co.*, 8 U.S. (4 Cranch) 370, 379 (1808). A decade later, Chief Justice Marshall offered the Court's most thorough—and most cited—early treatment of dicta:

> It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. *If they go beyond the case*, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.

*Cohens v. Virgina*, 19 U.S. (6 Wheat.) 264, 399–400 (1821) (emphasis added).

The principle that dicta are non-binding is rooted in the common law. In *Caroll v. Lessee of Caroll*, the Court explained that "this court and other courts organized under the common law, has never held itself bound by any part of

an opinion, in any case, which was not needful to the ascertainment of the right or title in question between the parties." 57 U.S. (16 How.) 275, 287 (1854). Just this term, Justice Gorsuch elaborated on this history:

> [C]ourts had to be careful not to treat every "hasty expression . . . as a serious and deliberate opinion." *Steel* v. *Houghton*, 1 Bl. H. 51, 53, 126 Eng. Rep. 32, 33 (C. P. 1788). To do so would work an "injustice to [the] memory" of their predecessors who could not expect judicial remarks issued in one context to apply perfectly in others, perhaps especially ones they could not foresee. *Ibid.* Also, the limits of the adversarial process, a distinctive feature of English law, had to be borne in mind. When a single judge or a small panel reached a decision in a case, they did so based on the factual record and legal arguments the parties at hand have chosen to develop. Attuned to those constraints, future judges had to proceed with an open mind to the possibility that different facts and different legal arguments might dictate different outcomes in later disputes.

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2277 (2024) (Gorsuch, J., concurring). All of this is to say, our legal tradition is clear: dicta are persuasive and informative; they are not binding.

### III.

The modern Supreme Court maintains this traditional view of dicta. *See, e.g.*, *NCAA v. Alston*, 594 U.S. 69, 93 (2021) ("aside" and "stray comments" are not binding); *id.* at 108 (Kavanaugh, J., concurring) ("The Court makes clear that the decades-old 'stray-comments' . . . were dicta and have no bearing on [the current case]."); *Ohio v. Clark*, 576 U.S. 237, 253 (2015) (Scalia, J., concurring in the judgment) ("[S]nide detractions do no harm; they are just indications of motive. Dicta on legal points, however, can do harm, because though they are not binding they can mislead."); *S. Union Co. v. United States*, 567 U.S. 343, 352 n.5 (2012) ("In any event, our statement in [a previous case] was unnecessary to the judgment and is not binding."); *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006) ("For the reasons stated by Chief Justice Marshall in *Cohens v. Virginia*, we are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated." (citation omitted)); *Jama v. ICE*, 543 U.S. 335, 351 n.12 (2005) ("Dictum settles nothing, even in the court that utters it.").

And in line with the Supreme Court, every other circuit court also treats dicta as persuasive but not precedential. *See, e.g.*, *Sexual Minorities Uganda v. Lively*, 899 F.3d 24, 35 n.6 (1st Cir. 2018) ("[T]he suggestion is dictum and, as such, lacks any binding effect."); *Jimenez v. Walker*, 458 F.3d 130, 142 (2d Cir. 2006) ("[D]icta are not and cannot be binding." (alteration, internal quotation mark, and citation omitted)); *United States v. Mallory*, 765 F.3d 373, 381 (3d Cir. 2014) ("[I]t is well established that a subsequent panel is not bound by dictum in an earlier opinion." (internal quotation marks and citation omitted)); *Payne v. Taslimi*, 998 F.3d 648, 654 (4th Cir. 2021) ("[W]e also recognize that dictum is not

binding."); *Knight v. Kirby Offshore Marine Pac., L.L.C.*, 983 F.3d 172, 177 (5th Cir. 2020) ("[T]he statement . . . is *dictum* and concomitantly, not binding precedent."); *Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019) ("Like most circuits, this circuit follows the rule that the holding of a published panel opinion binds all later panels unless overruled or abrogated en banc or by the Supreme Court. But only *holdings* are binding, not *dicta*."); *Ricci v. Salzman*, 976 F.3d 768, 773 (7th Cir. 2020) ("And dicta it was, so we are free to depart from it."); *Sanzone v. Mercy Health*, 954 F.3d 1031, 1039 (8th Cir. 2020) ("[W]e need not follow dicta." (citation omitted)); *United States v. Titties*, 852 F.3d 1257, 1273 (10th Cir. 2017) ("[A] panel of this Court is bound by a holding of a prior panel of this Court but is not bound by a prior panel's *dicta*." (citation omitted)); *Welch v. United States*, 958 F.3d 1093, 1098 (11th Cir. 2020) ("[O]ur discussion . . . was dicta, and it is not binding."); *Doe v. Fed. Democratic Republic of Eth.*, 851 F.3d 7, 10 (D.C. Cir. 2017) ("[B]inding circuit law comes only from the holdings of a prior panel, not from its dicta." (citation omitted)); *Curver Lux., SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1342 (Fed. Cir. 2019) ("[T]he statement [in a prior case] is dictum and thus not binding.").

Across the board, federal courts define dicta as aspects of an opinion not necessary to the determination of the legal questions presented. *See, e.g.*, *Sarnoff v. Am. Home Prods. Corp.*, 798 F.2d 1075, 1084 (7th Cir. 1986) ("A dictum is a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it."), *abrogation on other grounds by Hart v. Schering-Plough Corp.*, 254 F.3d 272 (7th Cir. 2001); *Mallory*, 765 F.3d at

381 (same); *Payne*, 998 F.3d at 654–55 (same); *United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) (adopting the *Sarnoff* definition of dictum and clarifying that "[a] statement is not dictum if it is necessary to the results or constitutes an explication of the governing rules of law." (citation omitted)); *Arcam Pharm. Corp. v. Faria*, 513 F.3d 1, 3 (1st Cir. 2007) ("[Dictum] 'comprises observations in a judicial opinion or order that are not essential to the determination of the legal question then before the court.'" (quoting *Municipality of San Juan v. Rullan*, 318 F.3d 26, 29 n.3 (1st Cir. 2003))); *Jimenez*, 458 F.3d at 142 ("Holdings— what is necessary to a decision—are binding. Dicta—no matter how strong or how characterized—are not." (citation omitted)); *United States v. McMurray*, 653 F.3d 367, 375–76 (6th Cir. 2011) ("Because the statement . . . was not necessary to the outcome in that case, it is dicta that is not binding." (internal quotation marks and citation omitted)), *abrogated on other grounds by United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017); *Sanzone*, 954 F.3d at 1039 ("Dicta is 'a judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential.'" (alterations omitted) (quoting *Passmore v. Astrue*, 533 F.3d 658, 661 (8th Cir. 2008))); *Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1256 (10th Cir. 2020) (Lucero, J., dissenting) ("[A] statement is dicta and not binding on a future court if it is 'unnecessary to the outcome of the earlier case and therefore perhaps not as fully considered as it would have been if it were essential to the outcome.'" (quoting *Exby-Stolley v. Bd. of County Comm'rs*, 906 F.3d 900, 912 (10th Cir. 2018), *vacated on reh'g*, 979 F.3d 784 (10th Cir. 2020) (en banc))); *United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) ("[D]icta is defined as those portions of an

opinion that are 'not necessary to deciding the case then before us.' Conversely, the holding of a case is . . . comprised both of the result of the case and those portions of the opinion necessary to that result by which we are bound." (citations omitted) (quoting *United States v. Eggersdorf*, 126 F.3d 1318, 1322 n.4 (11th Cir. 1997))); *Gersman v. Grp. Health Ass'n*, 975 F.2d 886, 897 (D.C. Cir. 1992) ("[Analysis that] is not determinative of the result . . . must be deemed not a holding, but rather a *dictum* . . . ."); *Curver Lux., SARL*, 938 F.3d at 1342 ("[T]he statement . . . was unnecessary to reach [the] holding" and therefore "is dictum.").

## IV.

We stand out like a flamingo in a flock of finches in treating dicta as binding. But it was not always so. For most of our history, we subscribed to the traditional approach. *See, e.g.*, *Exp. Grp. v. Reef Indus., Inc.*, 54 F.3d 1466, 1472–73 (9th Cir. 1995); *Sanders v. City of San Diego*, 93 F.3d 1423, 1432 (9th Cir. 1996). And the most fascinating part of our current practice is how it happened.

In *United States v. Johnson*, the en banc court fractured in a Fourth Amendment search-warrant case. 256 F.3d 895, 897–98 (9th Cir. 2001). One six-judge majority concluded the officers did not have probable cause, *id.* at 898–909 (Ferguson, J.), another six-judge majority separately addressed curtilage, *id.* at 909–19 (Kozinski, J.), and four judges concurred, *id.* at 919–21 (Tashima, J., concurring); *id.* at 921–22 (Gould, J., joined by Berzon, J., concurring); *id.* at 922 (Paez, J., concurring). Neither majority writing is styled as a concurrence; they are presented as two parts of a per curiam opinion.

The understanding of dicta took an unprecedented turn in the curtilage majority's writing. Responding to a

concurrence suggesting that the discussion of curtilage was unnecessary—and, accordingly, not binding—the curtilage writing declared: "We hold . . . that where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense." *Id.* at 914 (Kozinski, J.). It continued, "[w]here . . . it is clear that a majority of the panel has focused on the legal issue presented by the case before it and made a deliberate decision to resolve the issue, that ruling becomes law of the circuit and can only be overturned by an en banc court or by the Supreme Court." *Id.* at 915–16.

Irony upon irony, this pronouncement about dicta was, itself, dictum. *See id.* at 920 (Tashima J., concurring); *id.* at 922 (Gould, J., concurring). But the new dicta-is-binding approach was problematic for other reasons. The issue of dicta was never briefed, argued, or conferenced. *Id.* at 921. Moreover, the curtilage writing failed to fully consider the implications of the new pronouncement in light of the common-law tradition, Supreme Court precedent, and Article III. In fact, authoritative precedent is notably absent from the analysis. The two out-of-circuit opinions that were cited do not support the dicta-is-binding rule. The first case, *United States v. Crawley*, was anchored in the rule that "dictum is not authoritative." 837 F.2d 291, 292 (7th Cir. 1988). There, Judge Posner merely promoted alternative considerations for determining whether something is—or is not—dicta. *Id*. at 292–93. The second case, *United States v. Oshatz*, simply stated that appellate guidance about some aspects of trial court procedure is in a limited category of statements that, even if dicta, should not be disregarded. 912 F.2d 534, 540–41 (2d Cir. 1990). *Oshatz* is a slight nuance in

the Second Circuit's otherwise traditional view of dicta. *See, e.g.*, *Dr.'s Assocs. v. Distajo*, 66 F.3d 438, 452 (2d Cir. 1995) (distinguishing a previous Second Circuit case as dicta).

And there was one other problem: only four judges joined the dicta-is-binding discussion. *Johnson*, 256 F.3d at 909, 914; *see also id.* at 921–22 (Gould, J., concurring). That's right—not even the entire curtilage majority joined this fundamental reshaping of a longstanding and otherwise universally accepted rule. Four judges started us on this path.

So, the dicta-is-binding rule did not have the numbers to be real law. And yet, it quickly begat progeny. Some panels adopted *Johnson*'s dicta-is-binding pronouncement, mischaracterizing it as a rule established by the en banc court, *see, e.g.*, *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam), whereas others simply cited it as a concurrence, *see, e.g.*, *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004). Then, *fait accompli*, less than four years after *Johnson*, an actual en banc majority held that an articulation of the law in an opinion, whether necessary or not, becomes the law of the circuit. *See Barapind*, 400 F.3d at 750–51 (relying on the authority of *Cetacean Community*, *Miranda B.*, and the four-judge pronouncement in *Johnson*).

The stated rationale for the dicta-is-binding rule was to provide certainty about what constitutes the law of the circuit and not have future panels, lower courts, and litigants struggling to figure out what was necessary to the holding and what was extraneous and non-binding. *Johnson*, 256 F.3d at 914–15; *see also Barapind*, 400 F.3d at 751 n.8 (characterizing the rule as an exercise of our "supervisory function . . . [to] instruct[] three-judge panels and district courts about how to determine what law is binding on

them"). A laudable objective, for sure. But it was undermined immediately. Apparently having some reservation about the logical reach of the new approach, the curtilage writing in *Johnson* instructed that precedential value is afforded only to those issues "decided . . . after careful analysis, rather than through a casual, off-hand remark or a broad statement of principle." 256 F.3d at 916. And in the decades since, we have repeatedly stated that only "[*w*]*ell-reasoned* dicta is the law of the circuit." *See, e.g.*, *Li v. Holder*, 738 F.3d 1160, 1164 n.2 (9th Cir. 2013) (emphasis added) (citing *Johnson*, 256 F.3d at 914); *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019).

Whatever ground we might have gained in not having to parse what is and is not dicta, we lost in having to parse what is and is not well-reasoned. And this was not an equivalent trade. Whether something is "well-reasoned" depends on who you ask: not much of a legal standard. *See Ford v. Peery*, 9 F.4th 1086, 1094–96 (9th Cir. 2021) (VanDyke, J., dissenting from the denial of rehearing en banc). While not perfect or easy to apply, at least there is some objectivity in tussling with whether something is dictum.

Perhaps that is why the "well-reasoned" qualifier means little in practice. This case proves the point. *Hartpence*'s pronouncement that the False Claims Act's first-to-file rule is jurisdictional was not reasoned, let alone well-reasoned. And yet, the three-judge panel felt bound to apply it. If we started on this path because we thought the expansion of judicial decision-making authority would be limited, it has not turned out that way in practice. And it makes one wonder: if all the other federal appellate courts can figure out what is and isn't dicta without destabilizing their law, why can't we?

V.

Our solitary path is most troubling because it implicates serious questions about the scope of our constitutional authority. As one dissenter stressed when we officially elevated dicta to binding law, "Article III judges have authority only to decide cases and controversies." *Barapind*, 400 F.3d at 759 (Rymer, J., dissenting in part); *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982) ("Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'"); U.S. Const. art. III, § 2. Because the federal judicial power exists only "to adjudge the legal rights of litigants in actual controversies," *Valley Forge Christian Coll.*, 454 U.S. at 471 (quoting *Liverpool, N.Y. & Phila. S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39 (1885)), our "*power to bind* is limited to the issue that is before [us]," *United States v. Rubin*, 609 F.2d 51, 69 n.2 (2d Cir. 1979) (Friendly, J., concurring) (emphasis added). For that reason, Article III courts do not issue advisory opinions. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378–79 (2024) (citing 13 *Papers of George Washington: Presidential Series* 392 (C. Patrick ed. 2007)).

To treat dicta as binding challenges this critical constitutional limitation. When we analyze issues that reach beyond the case or controversy presented, that exercise "can be many things—deliberate or hasty, compelling or unpersuasive, thorough or thinly reasoned—but one thing it cannot be is an exercise of judicial power." *Wright*, 939 F.3d at 701. And yet, in the Ninth Circuit, it is. Our rule "give[s] judges too much power." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) (Posner, J.). By "offer[ing] our thoughts, however well considered" on peripheral and nonessential

issues, and deeming those thoughts precedent, we take ourselves outside the "Anglo-American tradition" of judging and render our opinions "essentially legislative." *Id.*

Judicial opinions are supposed to be different than legislation because we "render a judgment based only on the factual record and legal arguments the parties at hand have chosen to develop." *Loper Bright*, 144 S. Ct. at 2281 (Gorsuch, J., concurring). In performing our function, "[t]here are good reasons why courts write dicta." *Nat'l Fed'n of the Blind v. United Airlines, Inc.*, 813 F.3d 718, 746 (9th Cir. 2016) (Kleinfeld, J., concurring). It might "make the discussion of the law easier to understand, such as by discussing hypothetical and analogous cases" or it might be "written accidentally, because a judge explaining why the court reaches its outcome in one case will not be able to perceive every factual circumstance that will arise in the future, and potentially be covered by an accidentally overbroad rule articulated in the instant case." *Id.* The trouble is that dicta are always "observations which, however carefully formulated, are set forth without immediate, very likely without any, cost." Duxbury, *supra*, at 77. When we offer dicta, we are spared the hard reckoning of the legal implications of our words or what happens when they are put to the test. *Id.*

For that reason, we should heed the caution against "read[ing] judicial opinions like statutes." *Loper Bright*, 144 S. Ct. at 2281 (Gorsuch, J., concurring); *see also Nat'l Fed'n of the Blind*, 813 F.3d at 746 (Kleinfeld, J., concurring) ("When cases are not alike, the common law method is to determine whether to extend or distinguish and limit pronouncements in prior cases, not to treat all the pronouncements like statutes."). When assessing our past decisions, we would be wise to humbly appreciate both "the

possibility that different facts and different legal arguments may dictate a different outcome" and that "like anyone else, judges are 'innately digressive,' and [our] opinions may sometimes offer stray asides about a wider topic that may sound nearly like legislative commands." *Loper Bright*, 144 S. Ct. at 2281 (Gorsuch, J., concurring) (quoting Duxbury, *supra*, at 4)*.*

## VI.

In raising the problems with our dicta-is-binding rule, I join a chorus that has existed since the beginning. *See Johnson*, 256 F.3d at 920 (Tashima, J., concurring) (describing the new dicta-as-binding rule as so "wholly subjective and completely unworkable" that it "is no standard at all"); *Barapind*, 400 F.3d at 759 (Rymer, J., joined by Kleinfeld, Tallman, Rawlinson, and Callahan, JJ., concurring in the judgment in part and dissenting in part) ("Everything that ends up in F.3d cannot possibly be the law of the circuit. Views of two or three judges in an opinion on matters that are not necessarily dispositive of the case are no different from the same views expressed in a law review article; neither should be treated as a judicial act that is entitled to binding effect."); *Irons v. Carey*, 506 F.3d 951, 952 (9th Cir. 2007) (Kleinfeld, J., joined by Bea, J., dissenting from denial of rehearing) ("In our court, two judges on a panel make law for 20% of Americans as a 'supervisory' matter, even where the case does not require the matter to be decided. . . . The traditional view, which we seem to have rejected in *Barapind*, is that since we are empowered only to decide cases, not to legislate, only those principles necessary to the decision are binding law of the circuit."); *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 804 n.4 (9th Cir. 2012) (Bea, J., concurring in part and dissenting in part) ("[W]e are not bound by this *dicta*, which

was based purely on a hypothetical situation. We are bound only by *dicta* that is well-reasoned *dicta*."); *Alcoa*, 698 F.3d at 796 (Tashima, J., concurring) (outlining the odd series of cases that led to the dicta-is-binding rule); *Nat'l Fed'n of the Blind*, 813 F.3d at 745–48 (Kleinfeld, J., concurring) ("Our circuit, unlike traditional common law courts, the Supreme Court, and our sister circuits, purports in *Barapind v. Enomoto* to treat all our considered pronouncements, whether necessary to the decision or not, as binding law. . . . Writing what purports to be law of the circuit entirely outside the necessity of deciding the case before us increases the risk of troublesome error, and of exercising power beyond our authority."); *Ford*, 9 F.4th at 1095 (VanDyke, J., dissenting from denial of rehearing) ("Our binding dicta rule, while no doubt well-intentioned, has serious difficulties.").

Fixing our error regarding the False Claims Act's first-to-file rule is good, but the proper role of dicta is what we really need to set right. Our treatment of dicta is contrary to our common-law tradition, the jurisprudence of the Supreme Court and all our sister circuits, and our proscribed constitutional role. It is within our power to get back on track. I hope that someday soon we will.